Mary **LENIHAN**, Plaintiff,

v.

The **CITY of NEW YORK**, et al., Defendants.

**84 Civ. 4571 (WCC).**

United States District Court, S.D. New York.

July 14, 1986.

Janice Goodman, New York City, for plaintiff.

Frederick A.O. Schwarz, Jr., Corp. Counsel of City of New York, New York City, for defendants; Charlotte Biblow, Sharon G. Hyman, Asst. Corp. Counsels, of counsel.

WILLIAM C. CONNER, District Judge:

Plaintiff Mary Lenihan ("Lenihan"), a policewoman employed by the Police Department of the City of New York, brought this action pursuant to title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e–17 (1982), the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1982), and section 296 of the New York Human Rights Law, N.Y. Exec. Law § 296 (McKinney 1982), alleging that the police department and the various other municipal defendants had discriminated against her on the basis of her sex and had violated her due process rights. The matter was ultimately tried before the Court sitting without a jury. After considering the parties' posttrial submissions, I issued an Opinion and Order, familiarity with which is presumed, in which I concluded that Lenihan had proven her allegations. Judgment was subsequently entered in favor of Lenihan and against defendants. Lenihan now moves, pursuant to 42 U.S.C. §§ 1988, 2000e–5(k) (1982), for an award of attorney's fees.

In civil rights actions, "the Court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988 (1982).[1] "The purpose of section 1988 is to ensure 'effec-

---

**1.** The standards for awarding fees under section 2000e–5(k) of title VII of the Civil Rights Act of 1964 are the same as those under section 1988. *Hensley v. Eckerhart,* 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983); *see also* S.Rep. No. 1011, 94th Cong., 2d Sess. 4 (1976), U.S.Code Cong. & Admin.News 1976, pp. 5908, 5911.

tive access to the judicial process' for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) (quoting H.R.Rep. No. 1558, 94th Cong., 2d Sess. 1 (1976)).

 Computation of a "reasonable attorney's fee" begins with a determination of the number of hours reasonably expended by the prevailing party's counsel; that number is then multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. at 433, 103 S.Ct. at 1939; *Cohen v. West Haven Bd. of Police Comm'rs*, 638 F.2d 496, 505 (2d Cir.1980); *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093 (2d Cir. 1977); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.1974). The Court may then adjust this "lodestar" figure to compensate counsel for factors such as risk, quality of representation, and results obtained. *Hensley v. Eckerhart*, 461 U.S. at 434, 103 S.Ct. at 1939; *New York Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1153 (2d Cir.1983).

Lenihan seeks an award of attorney's fees and costs for the services of Janice Goodman, Esq. ("Goodman"), Lenihan's lead counsel, Jill Sheinberg, Esq. ("Sheinberg"), Goodman's associate, and Arlene Smoler ("Smoler"), Goodman's law student clerk. She calculates her costs as $15,926.-72 and her attorney's fees as $132,133.50 and requests that I adjust her attorney's fees upward by fifty percent. Lenihan also seeks fees and costs for the firm of Gordon & Gordon, P.C., which represented her before the Article II Medical Board and the New York City Commission on Human Rights. She calculates those costs and attorney's fees as $98.73 and $5,751.67, respectively.

The City contends that Lenihan's motion should be denied in its entirety because she has not submitted contemporaneous time records in support of her motion. Alternatively, the City argues that Lenihan's fee request should be reduced for the following reasons: (1) Lenihan's counsel expended more hours than were reasonably necessary, (2) Lenihan's attorneys duplicated each other's efforts, (3) Lenihan's attorneys' time records are too vague, and (4) the hourly rates requested by Lenihan's counsel are excessive. The City also objects to several items of Lenihan's costs, and to any award for representation before the Article II Medical Board. I address each of these issues in turn below.

### Contemporaneous Records

 The City contends that Lenihan's fee application must be denied in its entirety because Lenihan has not submitted her attorneys' contemporaneous time records as required in this Circuit, *see New York Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir.1983). I need not linger long on this contention. There is nothing to suggest that the records Lenihan has submitted are not contemporaneous records. To be sure, Lenihan has not submitted the original, handwritten time sheets filled out by her attorneys on a daily basis. *See* Reply Affidavit of Janice Goodman ¶¶ 6–7. However, Lenihan has submitted typewritten transcriptions of those original records. *Id.* No more is required. The rule in this Circuit prohibits the submission of *reconstructed* records, where no contemporaneous records have been kept. Lenihan has not submitted reconstructed records. Rather, she has attempted to present her attorneys' contemporaneous records in a form convenient for the Court. The Court routinely receives computerized transcriptions of contemporaneous time records from firms whose billing records are maintained in computers. Lenihan's submission is no less contemporaneous.

### Excessive Hours

 The City argues that Lenihan's counsel expended more hours than were reasonably necessary in performing certain tasks and that Lenihan's fee request should be reduced accordingly. In particular, the City contends that it was excessive for Goodman and Sheinberg to spend 98 hours researching and drafting plaintiff's posttrial reply brief, or for Smoler to spend 94 hours and Goodman 21 hours preparing

plaintiff's preliminary injunction papers. I do not agree. I reviewed plaintiff's posttrial submissions in the process of drafting my previous Opinion and Order, and they reflected the very high degree of professionalism which plaintiff's counsel exhibited in all phases of this litigation. I am not surprised at the number of hours involved. I do not think it was excessive for two attorneys to bill 98 hours between them for preparing the posttrial reply brief. This was not a small ten-page reply brief submitted in support of a pretrial motion. The trial lasted ten days; defendants' posttrial brief was nearly one hundred pages long, and contained numerous case citations and references to the trial transcript.

I also do not think the hours spent preparing plaintiff's preliminary injunction papers were excessive. These submissions were also of high quality. Perhaps fewer hours would have been required if more of the work had been done by Goodman or her associate, Sheinberg, rather than by her law student clerk, Smoler; however, Smoler's much lower hourly rate more than compensates for any such inefficiency. Finally, I do not think it was excessive for Goodman to bill 18 hours on September 3, 1984, the day before the crucial preliminary injunction hearing.

*Duplicative Hours*

The City next contends that Lenihan's fee request should be reduced because her attorneys unnecessarily duplicated each other's efforts. In particular, the City notes (1) that Goodman was accompanied by either Sheinberg or Smoler at pretrial conferences, the preliminary injunction hearing, and the trial; (2) that Goodman and Sheinberg both claim time preparing for the deposition of Dr. Symonds, (3) that Goodman and Smoler both claim time researching and preparing the preliminary injunction brief, (4) that Goodman claims time revising the posttrial brief drafted by Sheinberg, and (5) that Goodman and Sheinberg both claim time conferring with each other on January 22, 1985.

I do not agree that these activities reflect unnecessary duplication on the part of Len-

ihan's counsel. The City evidently felt that the pretrial conferences, the preliminary injunction hearing, and the trial warranted the presence of more than one attorney; it frequently sent two or more attorneys to pretrial conferences, and three attorneys sat at its counsel table throughout most if not all of the trial. I do not doubt that the City would seek compensation for these attorneys were it in a position to do so. Moreover, in a complex case such as this, it is not uncommon for an associate to accompany the partner-in-charge to court. The associate is often more familiar than the partner with certain aspects of the case, and the partner cannot be sure what will come up during the conference. It is more efficient for the partner to bring the associate along to the conference than to attempt to familiarize herself with all of the details of every issue in the case. *See, e.g., Johnson v. University College of the Univ. of Alabama,* 706 F.2d 1205, 1208 (11th Cir.) ("The retaining of multiple attorneys in a significant, lengthy employment discrimination case such as this one is understandable and not a ground for reducing the hours claimed. The use in involved litigation of a team of attorneys who divide up the work is common today for both plaintiff and defense work."), *cert. denied,* 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983).

The City's other claims of duplicative effort are equally meritless. As Goodman points out in her affidavit, Smoler did most of the research for the preliminary injunction motion and drafted one section of the brief; Goodman drafted the remainder of the brief and prepared the supporting affidavits. There is no indication that Goodman and Smoler did the same work. Nor was it unreasonable for Goodman to spend 20 hours revising Sheinberg's preliminary draft of plaintiff's posttrial brief. It is normal practice for attorneys to revise briefs several times before submitting them to the Court. And, as noted above, to the extent that Sheinberg's relative inexperience increased the amount of revision required, her lower hourly rate more than compensates for such inefficiency. Finally,

it is not unreasonable for both Goodman and Sheinberg to claim two hours for conferring with each other on January 22, 1985. *See, e.g., Veterans Educ. Project v. Secretary of the Air Force*, 515 F.Supp. 993, 994 (D.D.C.1981) (intra-office conferences among attorneys familiar with and working on particular litigation enhance the possibility of competent and efficient litigation, and hours spent in such conferences are not reduced under the rubric of "billing judgment" unless the result is unproductive), *aff'd mem.*, 679 F.2d 263 (D.C. Cir.1982).

*Vague Entries*

The City argues that some of Lenihan's time records are insufficiently detailed for the Court to determine whether the hours expended were reasonable. In particular, the City points to entries for such activities as "reviewing files," "general preparation," and "preparation for trial." It is true that a few of Lenihan's counsel's billing entries could be more detailed. However, it is clear from the context in which these entries occur what work was involved. For example, a seven-hour entry for "general preparation" is followed immediately by an entry the next day for the preliminary injunction hearing. Similarly, those entries which read merely "preparation," "preparation for trial," and "preparation for cross," are followed by entries for the trial. Thus, these entries are not so vague that the Court is unable to assess their reasonableness.

*Unsuccessful Claims*

■ The City also argues that Lenihan's fee request must be reduced because she did not prevail on all her claims. In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court considered whether a partially prevailing plaintiff could recover an attorney's fee under section 1988. The Court distinguished between cases in which a plaintiff presents in one lawsuit distinctly different claims for relief that are based on different facts and legal theories and those in which a plaintiff's claims for relief involve a common core of facts or are based on related

legal theories. *Id.* at 434–35, 103 S.Ct. at 1939–40. With respect to the former class of cases, the Court held that the congressional intent to limit awards to prevailing parties requires that unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claims. *Id.* at 435, 103 S.Ct. at 1940. With respect to the latter class of cases, however, the Court noted that much of a plaintiff's counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit is not to be viewed as a series of distinct claims. Instead, the district court is to focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

461 U.S. at 435, 103 S.Ct. at 1940.

■ The City notes that in her amended complaint, Lenihan requested, inter alia, an order permanently enjoining defendants from involuntarily retiring her on psychological grounds, a declaration that defendants' practice of involuntarily retiring police officers on psychological grounds without affording them a full due process adversarial hearing violates the due process clause, an order directing defendants to establish a full adversarial hearing process before the Pension Fund Board of Trustees, an order directing defendants to ex-

punge all material relating to the Medical Board inquiry from plaintiff's files, and an order that Lenihan's firearms be restored to her. The City contends that Lenihan did not prevail on any of these "claims." It observes that the Court enjoined defendants only from retiring Lenihan on psychiatric grounds on the record compiled to date, that the Court did not rule that Lenihan is psychiatrically fit for full-duty police work or that her firearms should be restored, that the Court refused to expunge from Lenihan's files material relating to the Medical Board inquiry, and that the Court did not rule that the police department must provide an adversarial due process hearing before police officers are involuntarily retired on psychiatric grounds.

Although the City's observations are correct, it has confused claims and remedies. Lenihan asserted three claims: a claim under title VII, a pendent claim under the New York Human Rights Law, and a due process claim. She prevailed on each of these claims. *See* 636 F.Supp. 998, 1016, 1017, 1021 (S.D.N.Y.1986). It is true that Lenihan sought a variety of remedies, only some of which the Court granted. However, that fact does not make this a lawsuit involving "distinctly different claims for relief that are based on different facts or legal theories," *Hensley v. Eckerhart*, 461 U.S. at 434, 103 S.Ct. at 1940. There can be little doubt that Lenihan's claims "involved a common core of facts" and that much of her attorneys' time was "devoted generally to the litigation as a whole." *Id.* at 435, 103 S.Ct. at 1940. The bulk of the evidence went to issues of liability and credibility; little was devoted to establishing what an appropriate remedy would be. The same is true of the time spent preparing the pretrial and posttrial briefs. Because Lenihan obtained excellent results, her attorneys should recover a fully compensatory fee encompassing all hours reasonably expended on the litigation. *Id.* at 435, 103 S.Ct. at 1940.[2]

*Hourly Rates*

Finally, the City argues that Lenihan's fee request should be reduced because the hourly rates she seeks for her attorneys' services are excessive. In support of this argument, the City has cited numerous civil rights fee award cases. However, none of these cases reflects current rates since the work involved in each was performed prior to 1983. *See, e.g., Lyons v. Cunningham*, 583 F.Supp. 1147, 1154–55 (S.D.N.Y.1983) ($150 per hour for work performed between 1979 and 1983); *Society for Good Will to Retarded Children, Inc. v. Cuomo*, 574 F.Supp. 994, 1001 (E.D.N.Y.1983) ($150 per hour for work performed between 1980 and 1983), *vacated on other grounds*, 737 F.2d 1253 (2d Cir.1984).

■ Reasonable fees under section 1988 are to be calculated according to the prevailing market rates in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). Lenihan seeks compensation for her lead counsel, Janice Goodman, at a rate of $200 per hour, for Goodman's associate, Jill Sheinberg, at a rate of $80 per hour, and for Goodman's law student clerk, Arlene Smoler, at a rate of $55 per hour. Considering the experience, skill, and reputation of plaintiff's attorneys, I conclude that the following hourly rates are appropriate: $180 per hour for Goodman, $75 per

---

**2.** The City argues that Lenihan is not entitled to fees in connection with her motion for reconsideration of the Court's decision not to expunge her records of material relating to the Medical Board inquiry. The City notes that the Court eventually ordered the City only to supplement Lenihan's records with the Court's Opinion and Order and the trial testimony of Dr. Goldstein. The City contends that because Lenihan refused to withdraw her motion when the City agreed to this relief in its answering papers, the time spent on the motion should be disallowed.

I might be inclined to disallow the 8.5 hours involved if the City had agreed to supplement Lenihan's records *before* she was forced to make her motion. However, the City's conduct in connection with the motion for reconsideration is representative of the intransigence it has shown throughout this litigation.

For the same reason, I will not disallow the hours incurred in connection with the City's premature appeal. The City should have waited until after a final judgment was entered.

hour for Sheinberg, and $50 per hour for Smoler.

Goodman has extensive experience in civil rights litigation. Following her graduation from New York University School of Law in 1971, Goodman worked for the Center for Constitutional Rights. For three years she litigated exclusively civil rights cases. Goodman entered private practice in 1974, and since then has devoted approximately eighty percent of her time to employment related litigation, primarily title VII and age discrimination cases. Goodman has been successful lead counsel or co-counsel in numerous title VII class actions, including *Women's Comm. for Equal Employment Opportunity (WC=EO) v. National Broadcasting Co.,* 71 F.R.D. 666 (S.D.N.Y.1976), *Kuck v. Berkey Photo, Inc.,* 81 F.R.D. 736 (S.D.N.Y. 1979), *Newman v. General Motors,* No. 78 Civ. 404 (LWP) (S.D.N.Y. Oct. 20, 1978), and *Wire Serv. Guild v. Associated Press,* No. 79 Civ. 991 (PNL) (S.D.N.Y. Sept. 22, 1983). She has also successfully litigated individual claims of sex and age discrimination. *See, e.g., Francoeur v. Corroon & Black Co.,* 552 F.Supp. 403 (S.D.N.Y.1982); *Pruzan v. Hias,* No. 84 Civ. 953 (CMM) (S.D.N.Y. Dec. 4, 1985). This Court has praised her skill, experience, determination, integrity, and wisdom, *see, e.g., Wire Serv. Guild,* slip op. at 4 (Leval, J.). Finally, Goodman is an adjunct professor of law at Benjamin N. Cardozo School of Law and Rutgers School of Law where she has taught seminars and clinical courses.

This Court awarded Goodman fees at a rate of $150 per hour for work performed in 1981, *Francoeur v. Corroon & Black Co.,* 552 F.Supp. 403 (S.D.N.Y.1982), and at an average rate of $175 per hour for work done between 1977 and 1983, *Wire Serv.*

*Guild v. Associated Press,* No. 79 Civ. 991 (PNL) (S.D.N.Y. Sept. 22, 1983). Jose Rivera, Esq., a law school classmate of Goodman's with comparable experience, was recently awarded fees at a rate of $200 per hour. *Alston v. Blue Cross & Blue Shield,* 37 Fair Empl.Prac.Cas. (BNA) 1792, 1798 (E.D.N.Y.1985) [Available on WESTLAW, DCTU database]. Judith Vladeck, Esq., a colleague of Goodman's with greater total years of litigation experience was recently awarded fees at a rate of $225 per hour. In view of Goodman's extensive experience in civil rights litigation, the skill she exhibited in prosecuting this action, this Court's general knowledge of the prevailing rates in the New York legal community, and the rates at which Goodman and other attorneys of like skill and experience have been compensated in similar cases, I conclude that $180 per hour is a reasonable rate for Goodman's services.[3]

Lenihan also seeks compensation for Goodman's associate, Sheinberg, at a rate of $80 per hour, and for Goodman's law student clerk, Smoler, at a rate of $55 per hour. Having considered these individuals' experience, *see* Exhibits B, C to Affidavit of Janice Goodman, and the rates at which associates, paralegals, and student clerks have been compensated in similar cases, *see* Reply Memorandum in Support of Plaintiff's Application for Attorney's Fees at 12–14 (citing cases), I conclude that $75 per hour for Sheinberg and $50 per hour for Smoler are appropriate hourly rates.

*Multiplier*

Lenihan also seeks a fifty percent upward adjustment of the fee award in this case. She argues that an upward adjustment is warranted because her attorneys assumed a substantial risk of not being

---

3. The City has argued that Goodman's own customary billing rate for this type of case is an appropriate gauge of the prevailing market rate for similar services. This argument is more than a little disingenuous in light of the position the City took in *Berkman v. City of New York,* No. 79 Civ. 1813 (CPS) (E.D.N.Y. Nov. 25, 1985). Faced with a fee request from a prestigious New York law firm, the City argued that opposing counsel's customary billing rate was not an ap-

propriate indicium of prevailing market rates since that firm's fees were at the upper end of the New York market scale.

Attorneys in civil rights practice often discount the price of their services because the clients they serve cannot like large corporations pay the "going rate." The fact that these attorneys discount their services to needy clients should not be a penalty when it comes time to assess what those services are worth.

paid, were required to prepare for trial in a very short period of time, and were forced to turn away fee-paying clients so that adequate time could be devoted to this litigation.

In *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the Supreme Court considered whether, and under what circumstances, an upward adjustment of an award of attorney's fees based on prevailing market rates is appropriate under section 1988. The Court held that "[n]either complexity nor novelty of the issues ... is an appropriate factor in determining whether to increase the basic fee award," *id.* at 898–99, 104 S.Ct. at 1548–49, and that " 'quality of representation' ... may justify an upward adjustment only in the rare case where the ... quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and [where] the success was 'exceptional,' " *id.* at 899, 104 S.Ct. at 1549. However, because the attorney in *Blum* was not working on a contingency basis, the majority opinion explicitly did not decide the propriety of adjusting the lodestar figure upward to encourage attorneys to take cases that involve a risk of nonpayment. *Id.* at 901 & n. 17, 104 S.Ct. at 1550 & n. 17. In a separate concurring opinion, Justice Brennan, joined by Justice Marshall, stressed that the statutory history of section 1988 indicated that the risk of not recovering any fee is a proper basis on which a district court may award an upward adjustment to an otherwise compensatory fee. *Id.* at 902–04, 104 S.Ct. at 1550–51.

In the wake of *Blum*, five of the seven courts of appeals to address this issue have adopted Justice Brennan's view. *See Wildman v. Lerner Stores Corp.*, 771 F.2d 605, 610–13 (1st Cir.1985); *LaDuke v. Nelson*, 762 F.2d 1318, 1333 (9th Cir.1985); *Sierra Club v. Clark*, 755 F.2d 608, 620 (8th Cir. 1985); *Jones v. Central Soya Co.*, 748 F.2d 586, 591 (11th Cir.1984); *Hall v. Borough of Roselle*, 747 F.2d 838, 842–43 (3d Cir. 1984). *But see McKinnon v. City of Berwyn*, 750 F.2d 1383, 1392 (7th Cir.1984); *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 28–29 (D.C.Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985). Although our court of appeals has not addressed the issue post-*Blum*, several district court decisions support an enhanced award where counsel assumes a risk of not being paid. *See, e.g., Williamsburg Fair Hous. Comm. v. Ross-Rodney Hous. Corp.*, 599 F.Supp. 509, 519–20 (S.D. N.Y.1984); *Society for Good Will to Retarded Children, Inc. v. Cuomo*, 103 F.R.D. 168, 171 (E.D.N.Y.1984).

■ Successful enforcement of civil rights depends on the willingness of capable attorneys to accept cases based on contingent fees. It is unlikely that skilled attorneys will accept such cases if the fees available upon prevailing are strictly limited to an hourly market rate. The prevailing market rate is generally based on what an attorney in private practice charges his clients. That rate reflects the expectation that he will be paid for the hours he devotes to the case, regardless of whether or not his client wins. The prevailing market rate, therefore, is essentially based on an assumption of payment. Accordingly, where an attorney has assumed a substantial risk of not being paid, it is appropriate to adjust upward a prevailing-market-rate attorney's fees award under section 1988.

In the instant case, there was a significant possibility that Goodman would not be paid for her services. Goodman's payment was in part contingent upon the success of Lenihan's suit, and this was by no means a "sure winner." From the outset it was clear that Lenihan would not be able to pay her attorneys' customary hourly rate; as the litigation progressed, it became clear that Lenihan would not even be able to pay the substantially reduced fees agreed to. In the end, Lenihan was barely able to cover the substantial disbursements. In addition, because of the expedited schedule involved, Goodman was required to devote almost all her time to this case, and was forced to turn away a number of fee-paying clients. Under the circumstances of

this case, I conclude that a twenty-percent upward adjustment is reasonable.

*Costs*

In addition to reasonable attorney's fees, Lenihan seeks reimbursement for costs totalling $15,926.72 incurred in prosecuting this action. The City objects to several of the items for which Lenihan seeks reimbursement. In particular, the City contends that the Court should not award fees for plaintiff's expert witnesses, or alternatively, that those fees should be limited to the statutory fee provided in 28 U.S.C. § 1920 (1982).

Although our court of appeals has not ruled on the issue, there is support in the district court decisions in this Circuit for the proposition that a plaintiff who prevails in a civil rights action is not limited to the statutory costs of section 1920. Rather, with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred during the course of the litigation may be taxed as costs under section 1988. *See, e.g., Cool v. Police Dep't of the City of Yonkers*, 620 F.Supp. 954, 956 (S.D.N.Y. 1985). This is the rule in a number of other circuits. *See, e.g., Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir.1983); *Palmigiano v. Garrahy*, 707 F.2d 636, 637 (1st Cir.1983) (per curiam); *Dowdell v. City of Apopka, Florida*, 698 F.2d 1181, 1192 (11th Cir.1983). *But see Lyons v. Cunningham*, 583 F.Supp. 1147, 1155–56 (S.D.N.Y.1983) (refusing to depart from the rule prevailing in non-civil-rights cases).

■ Given the policy considerations underlying section 1988 and its legislative history, I agree with those courts that have held that the term "costs" in section 1988 should not be limited by reference to 28 U.S.C. § 1920 (1982). I therefore conclude that where the expert testimony was reasonably necessary, the Court may award a prevailing plaintiff in a civil rights action reasonable expert witness fees under section 1988.

In the instant case, I have no doubt that Lenihan's use of psychiatric experts was reasonably necessary. Plaintiff's experts criticized the reliability and validity of the City's psychiatrists' reports and convinced the Court that those reports were not reliable enough to form the basis for the police department's decision to retire Lenihan. Having reviewed plaintiff's statement of costs, I conclude that the other items for which Lenihan seeks reimbursement also were reasonably necessary, and they will be allowed in their entirety.

*Fees for Gordon & Gordon, P.C.*

■ As noted above, Lenihan also seeks attorney's fees for the services of Gordon & Gordon, P.C., the firm that represented her before the Article II Medical Board and the New York City Commission on Human Rights. The City agrees that Lenihan is entitled to an award of attorney's fees for Gordon & Gordon's representation before the Commission on Human Rights, but contends that Lenihan is not entitled to an award of attorney's fees for Gordon & Gordon's work in connection with the Article II Medical Board proceedings. *See* Defendants' Memorandum of Law in Opposition to Plaintiff's Application for Attorney's Fees at 15.

■ In light of the Supreme Court's decisions in *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), and *Webb v. Board of Educ. of Dyer County*, 471 U.S. 234, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985), I conclude that Lenihan is not entitled to an award of attorney's fees for Gordon & Gordon's representation before the Article II Medical Board. From these cases it is clear that sections 1988 and 2000e–5(k) authorize an award of attorney's fees only for those administrative proceedings that are a required step in the statutory procedure for initiating a federal civil rights action. In the instant case, the proceedings before the Commission on Human Rights and the EEOC were procedural prerequisites to Lenihan's commencing a federal title VII action, and Lenihan is therefore entitled to an award of attorney's fees in connection with those proceedings.

On the other hand, the proceedings before the Article II Medical Board were not part of the state administrative remedies that a title VII claimant is required to pursue before commencing proceedings in a federal forum. Nor were they a prerequisite to commencing an action under section 1983. Lenihan alleged, and this Court found, that the proceedings before the Article II Medical Board were part of the police department's discriminatory treatment of Lenihan. Those proceedings were not part of the statutory *remedy* for redress of a prior wrong, they were part of the *wrong* complained of in plaintiff's federal civil rights action. *See, e.g., Venuti v. Riordan*, 702 F.2d 6, 9 (1st Cir.1983) (tavern owners who brought a federal civil rights action challenging the denial of their request for a license were not entitled to an award of attorney's fees for administrative proceedings). Accordingly, Lenihan is not entitled to an award of attorney's fees for Gordon & Gordon's representation before the Article II Medical Board.[4]

Based on the experience of Kenneth Gordon, Esq., and his particular knowledge of the *Acha v. Beame* class action litigation, I consider the requested rate of $125 per hour eminently reasonable.[5] Accordingly, Lenihan may recover $1,750 for Gordon & Gordon's work before the Commission on Human Rights, and $400, or approximately one-half of the requested $812.50, for Gordon & Gordon's work in connection with Lenihan's fee application, for a total of $2,150. It is not clear from the Gordon affidavit which of the claimed disbursements totalling $98.73 were incurred in connection with the Article II Medical Board proceeding, and which were incurred in connection with the proceedings before the Commission on Human Rights. The Court therefore is not in a position to award Lenihan any of these costs.

---

**4.** In theory, the attorney's fees Lenihan incurred in connection with the Article II Medical Board proceedings are a component of her damages resulting from the department's discrimination, and not part of the legal costs of her federal civil rights action. *See Venuti v. Riordan*, 702 F.2d 6, 9 (1st Cir.1983).

## Conclusion

As set forth more fully above, Lenihan is entitled to attorney's fees and costs as follows:

| Attorney | Hourly Rate | Hours | Multi-plier | Total |
|---|---|---|---|---|
| Janice Goodman | $180 | 516.1 | 1.2 | $111,477.60 |
| Jill Sheinberg | $ 75 | 273.9 | 1.2 | $ 24,651.00 |
| Arlene Smoler | $ 50 | 127.3 | 1.2 | $ 7,638.00 |
| | | | | $143,766.60 |
| Kenneth Gordon | $125 | 15.6 | 1.0 | $ 1,950.00 |
| Murray Gordon | $250 | 0.8 | 1.0 | $ 200.00 |
| | | | | $ 2,150.00 |
| Costs | | | | $ 15,926.72 |

SO ORDERED.

---

**5.** Lenihan also seeks $250 per hour for eight-tenths of an hour's work performed by Murray Gordon in connection with the proceedings before the Commission on Human Rights. In light of Murray Gordon's lifetime of experience in the employment discrimination field, I do not find this request unreasonable.