Charles MERIWETHER, Jr., individually and on behalf of all others similarly situated, Plaintiff,

v.

Thomas A. COUGHLIN, III, Commissioner of the New York State Department of Correctional Services, Charles Scully, Superintendent of Green Haven Correctional Facility, and David R. Harris, Ex–Superintendent of Green Haven Correctional Facility, Defendants.

No. 80 Civ. 4712(CES).

United States District Court, S.D. New York.

Dec. 13, 1989.

Curtis, Mallet–Prevost, Colt & Mosle by Eliot Lauer, Diane da Cunha and Daniel J. O'Brien, New York City, for plaintiff.

Attorney General of the State of N.Y. by Barbara B. Butler and Charles F. Sanders, New York City, for defendants.

STEWART, District Judge:

As this action approaches completion having been litigated on the merits on both the trial and appellate levels, this court must decide three remaining issues:

1. plaintiffs' application for attorneys' fees to the district court pursuant to 42 U.S.C. § 1988 ("section 1988"); [1]

2. plaintiffs-appellants-cross-appellees' (hereinafter "plaintiffs") application for attorneys' fees to the Second Circuit pursuant to section 1988; [2]

3. plaintiffs' application for costs on appeal pursuant to Rule 39(c) of the Federal Rules of Appellate Procedure. [3]

Familiarity with the underlying facts of this nine-year-old litigation is assumed. We recite only that background which is relevant to the matters to be now decided.

### Factual Background

This class action arose from events surrounding the transfer of certain prisoners

---

1. Section 1988 reads in relevant part that, "the court, in its discretion, may allow the prevailing party … a reasonable attorney's fee as part of the costs."

2. By Order dated October 20, 1989, the Second Circuit remanded plaintiffs' applications for attorneys' fees and costs related to their appeals for consideration by this court in consolidation with plaintiffs' separate fees application to this court. *Meriwether v. Coughlin*, Nos. 88–2406, 88–2408 (2d Cir. Oct. 20, 1989).

3. Rule 39(a) reads in relevant part:

Except as otherwise provided by law, if an appeal is dismissed, costs shall be taxed against the appellant unless otherwise agreed by the parties or ordered by the court; if a judgment is affirmed, costs shall be taxed against the appellant unless otherwise ordered; if a judgment is reversed, costs shall be taxed against the appellee unless otherwise ordered; if a judgment is affirmed or reversed in part, or is vacated, costs shall be allowed only as ordered by the court.

from Green Haven Correctional Facility on July 24, 1980. Plaintiffs alleged at trial that they were transferred in violation of their first and fourteenth (due process) amendment rights and abused during the transfer in violation of their eighth amendment rights. A jury rendered a decision on July 6, 1987 in favor of most of the plaintiffs on their first, eighth, and fourteenth amendment claims and awarded compensatory damages to each of the prevailing plaintiffs. It further assessed punitive damages totaling $750,000 against defendants Thomas A. Coughlin, III, Commissioner of the New York State Department of Correctional Services ("DOCS"), and Charles Scully, Superintendent of Green Haven.

On July 8, 1988, this court granted defendants' motion for judgment notwithstanding the verdict ("j.n.o.v.") with respect to plaintiffs' first and fourteenth amendment claims and denied the motion with respect to plaintiffs' eighth amendment claims. In addition, this court reversed the jury's award of punitive damages and ordered a new trial on damages as to the eighth amendment claim. *Meriwether v. Coughlin*, No. 80 Civ. 4712 (S.D.N.Y. July 8, 1988) (the "July 8th Decision"). The July 8th Decision also addressed plaintiffs' section 1988 motion for attorneys' fees. We stated that as a result of the j.n.o.v., plaintiff should submit a renewed fee application specifying hours reasonably spent on the eighth amendment claims. July 8th Decision at 50–51. We further stated that evidence concerning whether enhancement of the lodestar fee was appropriate could be submitted by plaintiffs in the renewed application. *Id.*

While reserving judgment on the fee award, the July 8th Decision did address certain of defendants' objections to the fee application. In response to defendants' objection that the documentation offered in support of the fee request by plaintiffs' counsel, the firm of Curtis, Mallet–Prevost, Colt & Mosle ("Curtis Mallet"), was inadequate, we held that the chronological computer printouts submitted by Curtis Mallet were sufficient to comply with the Second

Circuit's requirement of "contemporaneous time records." *Id.* at 45.

In response to defendants' objections that the hourly rates claimed by Curtis Mallet were unreasonable, we held that the following rates were reasonable:

| | |
|---|---|
| Eliot Lauer .............. | $235 |
| | $250 (after 1/1/87) |
| Diane da Cunha ......... | $100 |
| | $124 (after 1/1/86) |
| Cecil McNab ............ | $ 70 |
| | $ 80 (after 1/1/85) |
| Daniel J. O'Brien......... | $ 85 |
| Turner F. Smith ......... | $130 |
| Leonard Perna ........... | $ 82 |
| David Frederickson....... | $ 85 |
| Richard V. Conza ........ | $ 88 |
| Jackie Chorney........... | $ 60 |
| Charlotte A. Kelley ...... | $ 55 |

*Id.* at 48–49.

Finally, in response to defendants' objection that the plaintiffs' attorneys failed to exercise "billing judgment" and overstated their billable hours, we noted that while the fee application was to be re-submitted pursuant to our directions in the July 8th Decision, it was "noticeably free of bill-padding." *Id.* at 46.

On August 12, 1988, this court amended the July 8th Decision and issued an Order certifying the July 8th Decision for interlocutory appeal. On June 30, 1989, the Second Circuit, *inter alia*, reversed this court's j.n.o.v. as to the first amendment claims, affirmed the award of compensatory damages for the eighth amendment claims, affirmed the j.n.o.v. on the due process claim, and affirmed the setting aside of the jury's punitive damages award. *Meriwether v. Coughlin*, 879 F.2d 1037 (2d Cir.1989). By Order, dated October 20, 1989, the Second Circuit also remanded to this court plaintiffs' application for fees and costs on appeal for consolidated consideration along with the fee application to the district court. We will discuss each application separately.

### Section 1988 Fee Application to the District Court

■ We begin by briefly summarizing the principles governing the award of attorneys' fees under section 1988. The legislative history indicates that Congress intended section 1988 to compensate "private at-

826

torneys general" to encourage private enforcement of civil rights statutes. *See Mid–Hudson Legal Services v. G & U,* 578 F.2d 34, 37 (2d Cir.1978) (legislative history of section 1988 indicates concern of Congress that attorneys acting as "private attorneys general" receive reasonable compensation). By limiting fees to "prevailing parties," it is evident that only meritorious claims are to compensated under section 1988.

■ A "prevailing party" is a litigant who has succeeded on "any significant issue in litigation which achieves some of the benefits sought in bringing suit." *Gingras v. Lloyd,* 740 F.2d 210, 212 (2d Cir.1984) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). In *Texas State Teachers v. Garland Independent School District,* —— U.S. ——, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), the Supreme Court held that for purposes of deciding who is a "prevailing party" under section 1988, there must be a material alteration of the legal relationship of the parties. *Id.* at ——, 109 S.Ct. at 1493. If that change has occurred, the degree of the plaintiff's overall success goes to the reasonableness of the award, not to the availability of the award. *Id.* There is no dispute by the parties that plaintiffs' ultimate success on their first amendment and eighth amendment claims establishes their "prevailing party" status and therefore makes them eligible for an award of attorneys' fees under section 1988.

The July 31, 1987 Application

On July 31, 1987, plaintiffs submitted their first application for attorneys' fees and expenses (the "First Application"). In that original application plaintiffs asked for compensation in the amount of $427,537.75 in attorneys' fees and $24,959.73 in costs for a total of $452,497.48. It was this application which was addressed in our July 8th Decision granting defendants' j.n. o.v. motion.

Plaintiffs argue that in light of the Second Circuit's *Meriwether* decision which restored the jury verdict with regard to the first amendment claim, "virtually all of the time and expenses covered by the July 31, 1987 fee application are again subject to reimbursement." August 25, 1989 Supplemental Affidavit in Support of Plaintiffs' Application for Attorneys' Fees ("Plaintiffs' Supplemental Affidavit") at ¶ 9. Plaintiffs contend that no evidence was offered at trial solely on the due process claim and that the time spent with respect to the due process claim was also absolutely necessary for the development of the first amendment claim. *Id.* Thus, plaintiffs argue that the only time devoted to the due process claim and the issue of punitive damages, upon which plaintiffs ultimately did not prevail, was that time devoted to discrete legal research upon those two issues and the time spent drafting particular portions of the pre-trial memorandum and requests to charge. Plaintiffs' Supplemental Affidavit at ¶ 10. As such, plaintiffs deduct from the First Application a total of $7,625 representing an estimated 55 hours spent by O'Brien, Lauer, and da Cunha on the due process and punitive damages issues out of a total of 3,368.75 hours plaintiff claims was spent on the case as a whole up to the date of the First Application.

Defendants counter by raising the same arguments they raised when opposing the First Application, principally that Curtis Mallet did not support their application with contemporaneous time records and that the hourly rates and number of hours claimed are excessive. In addition, defendants argue that given the "colloquies off the record with the Court and counsel concerning the viability of the due process claim, there should be a reduction of more than 55 hours of the 3,368.75 hours claimed spent at pre-trial and trial." October 31, 1989 Supplemental Affidavit in Opposition to Plaintiffs' Motion for Attorneys' Fees ("Supplemental Affidavit in Opposition") at ¶ 16.

■ As a threshold matter, we see no reason to depart from our findings contained in the July 8th Decision regarding the use and adequacy of chronological computer printouts as satisfying the contempo-

raneous time record requirement of *New York State Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir.1983), and the reasonableness of the rates requested by Curtis Mallet in the First Application. *See Missouri v. Jenkins*, —— U.S. ——, 109 S.Ct. 2463, 2470, 105 L.Ed.2d 229 (1989) (reasonableness of fee must be determined with reference to traditional billing practices and "a fee that would have been deemed reasonable if billed to affluent plaintiffs by their own attorneys") (quoting *Riverside v. Rivera*, 477 U.S. 561, 591, 106 S.Ct. 2686, 2702, 91 L.Ed.2d 466 (1986) (Rehnquist, J., dissenting)). We therefore adopt our earlier findings. Further, despite defendants' contention that plaintiffs' attorneys failed to exercise "billing judgment," we see no need to change our original view that the First Application was "noticeably free of bill-padding." [4] July 8th Decision at 46. Indeed, defendants concede that they presently raise nothing regarding those issues which they did not raise earlier in opposition to the First Application. Supplemental Affidavit in Opposition at ¶ 14.

In their original objections to the First Application, defendants principally argued that the Curtis Mallet entries lacked specificity, contained "multiple time" activity records, and billed for hours spent by more than one attorney on the same project. October 1, 1987 Affidavit in Opposition to Motion for Attorneys' Fees ("Defendants' First Affidavit in Opposition").

It is our view that the multiple entries comply with the Second Circuit's requirement of specificity in *Carey* that the records specify the date, hours expended, and the nature of the work done. [5] *See Carey*, 711 F.2d at 1148. Further, it is not a requirement that the records show "the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *United States Football League v. National Football League*, 704 F.Supp. 474, 477 (S.D.N.Y.1989) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 473 (2d Cir.1974)), *aff'd*, 887 F.2d 408 (2d Cir.1989).

■ However, we agree with defendant that other entries such as "telephone conference with defendant" or "reviewing new client material" lack specificity. However, in many instances the context of vague entries is made clearer by entries following it. [6] *Cf. United States Football League*, 704 F.Supp. at 477 (vague entries made more specific by subsequent entries); *Lenihan v. City of New York*, 640 F.Supp. 822, 826 (S.D.N.Y.1986) (vague entries made more specific by subsequent entries such that court can determine reasonableness). For those entries which are too vague to adequately assess reasonableness, we deduct 15% from the fee request. *Cf. Carey*, 711 F.2d at 1146 (percentage reductions permissible to "trim fat" from a fee application); *United States Football League*, 704 F.Supp. at 477–78 (10% reduction of ultimate fee award for numerous vague entries on time records).

■ Finally, we disagree with defendants' suggestion that the work done by two or more attorneys on this case was duplicative. The practice of dividing work among various attorneys in a complex and lengthy case is a common and practice. That all attorneys would need to familiarize themselves with all the aspects of the case

---

4. In the July 8th Decision we declined to rule on the issue of whether plaintiffs' attorneys failed to exercise "billing judgment" because we required plaintiffs' attorneys to submit a renewed fee application based on only the eighth amendment claim. As the July 8th Decision modified the effect of the jury verdict, the eighth amendment claim was the only claim upon which the plaintiffs had prevailed.

5. A typical example of a multiple entry to which defendant objects is the recitation of the following 2.25 hour activity done on 1/8/86: "Conver-

sation with Mr. Lauer, letter to Judge Stewart, preparation of motion for class."

6. An example of such an entry is the following:

| | | | |
|---|---|---|---|
| 050185 | CMN | .50 | Telephone conference with defendant. |
| 051485 | CMN | .25 | Telephone conference with defendant. |
| 052385 | CMN | 2.00 | Preparation for deposition. |
| 052485 | CMN | 5.50 | Prepare for, [sic] deposition of defendant. |

and consequently attend proceedings in which they did not play an active role is understandable and often a necessity. We therefore are unpersuaded by defendants' arguments in this regard. *Cf. Lenihan*, 640 F.Supp. at 825 (retention of multiple attorneys and the presence of more than one attorney at a conference is not duplication of work). Accordingly, we next discuss the plaintiffs' proposed reductions in their Supplemental Affidavit.

We are troubled by the lack of documentation on the *de minimus* amount of time claimed to have been spent by plaintiffs' counsel on the punitive damages and due process claims. Indeed, plaintiffs' claim that only 55 hours out of a total of over 3,368 hours prior to July 31, 1987 were spent on due process and punitive damages is belied by the fact that almost a full ⅓ of Mr. O'Brien's time after July 31, 1987 (62 out of a total of 185 hours) was spent on due process and punitive damages. *See* Plaintiffs' Supplemental Affidavit at 12, n **.

However, our unease is somewhat assuaged by the fact that the Second Circuit has stated that "[w]here the claims raised are not clearly divisible, for example, where a plaintiff challenges a single procedure raising alternative grounds, and the practice is found unlawful on the basis of only one ground, the court could properly decline to reduce the award of fees." *McCann v. Coughlin*, 698 F.2d 112, 130 (2d Cir.1983).

The Supreme Court, in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1982), has stated that in cases which involve a "common core of facts" or in which the claims are "based on related legal theories," the time of the attorneys would be "devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940. In this circumstance the Supreme Court directs that the district court focus

on the significance of the overall relief and that the fee award "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the suit." *Id.; see also Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1279 n. 14 (7th Cir.1983) (time spent litigating unsuccessful claims for relief that are "related" to successful claims may be compensated (citing *Hensley, supra* )).

In the instant action both the first amendment claim and the due process claim arose from circumstances surrounding the transfer of prisoners and their attendance at a meeting with prison officials concerning conditions at Green Haven on July 21, 1980. The first amendment claims derived from defendants' decision to transfer the plaintiffs because of their outspokenness at the meeting; the due process claims derived from certain promises made by prison officials at the meeting not to retaliate against the inmate attendees. As such, it is clear that under the Supreme Court's "common core of facts" standard the unsuccessful due process claim was "related" to the successful first amendment claim.[7] Accordingly, it is our belief that plaintiffs could have colorably argued that no reduction of the claimed fees was necessitated by their lack of success on the due process claim or the punitive damages issue.[8]

That being said, plaintiffs' willingness to deduct hours from their fee application for time spent on these issues upon which they did not prevail indicates a good-faith approach to the fees question.

■ However, in light of plaintiffs' willingness to deduct for time spent on the due process and punitive damages issues, it is our view that a more realistic assessment of the actual time spent on these issues is warranted. Given the amount of documented time Mr. O'Brien spent on these issues after July 31, 1987, we believe it would be within our discretion to deduct

---

7. Indeed, in its *Meriwether* decision, the Second Circuit stated that the compensatory damages resulting from the claimed due process violation and the first amendment violation were the same. *Meriwether*, 879 F.2d at 1047.

8. Plaintiffs were awarded compensatory damages for violations of their eighth amendment rights.

33% from the fee request. However, as plaintiffs exhibit a good-faith approach to the question we deduct, along with the $7,625 already deducted by plaintiffs, another 13.5% from the requested fees (a total 15% reduction) which we believe represents a more reasonable amount of time necessary to devote to the two issues than the 1.5% of time originally claimed. In addition to the reduction in fees, we further deduct an additional 30% from the costs requested in the First Application to reflect any expenses accrued by the due process claim and punitive damages issue and those expenses which are inadequately described.[9]

### Upward Enhancement

In their First Application and in their subsequent submissions plaintiffs assert that are entitled to a 50% enhancement of the lodestar amount to compensate them for the "extremely contingent nature of payment and the excellent results achieved." [10] Plaintiffs' Supplemental Affidavit at ¶ 45; *see also* July 31, 1987 Plaintiffs' Memorandum of Law in Support of Their Application for Attorneys' Fees ("Plaintiff's Memorandum of Law") at 9–11.

■ The Supreme Court has stated that "[w]here a plaintiff has achieved excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Blum v. Stenson*, 465

U.S. 886, 901, 104 S.Ct. 1541, 1550, 79 L.Ed.2d 891 (1984) (quoting *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940). When the fee applicant has carried his or her burden of showing that the claimed hourly rate and the number of hours are reasonable, "the resulting product is presumed to be the reasonable fee." *Blum*, 465 U.S. at 897, 104 S.Ct. at 1548. The fee applicant also has the burden to show that an upward enhancement is necessary to provide fair and reasonable compensation. *Id.* at 898, 104 S.Ct. at 1548.

In *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1986), the Court addressed the issue of whether a fee applicant's risk of not prevailing justified upward enhancement of the lodestar figure. The *Delaware Valley* Court plurality held, "in the absence of further legislative guidance, we conclude that multipliers or other enhancement of a reasonable lodestar figure for assuming the risk of loss is impermissible under the usual fee-shifting statutes." *Id.* 483 U.S. at 727, 107 S.Ct. at 3087.

In her concurrence, Justice O'Connor added that "a court may not enhance a fee award any more than necessary to bring the fee within the range that would attract competent counsel." *Id.* at 733, 107 S.Ct. at 3090 (O'Connor, J., concurring).

■ Plaintiffs have averred that both Prisoners' Legal Services and an attorney appointed by the court declined to take the case due to the high degree of risk involved.[11] Plaintiffs' Memorandum of Law

---

**9.** Defendants argue that reimbursement for costs should only be for items enumerated in 28 U.S.C. § 1920. However, in *Kuzma v. I.R.S.,* 821 F.2d 930 (2d Cir.1987), the Second Circuit has expressly delineated "identifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs," items not contemplated by § 1920, as generally taxable under section 1988. *Kuzma,* 821 F.2d at 933–34.

**10.** The "lodestar" is the product of reasonable hours times a reasonable rate. *See Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939. To calculate the lodestar the following may be considered by the court: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal ser-

vice; (4) the preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the relationship with the client; and (12) awards in similar cases. *See Hensley,* 461 U.S. at 430, n. 3, 103 S.Ct. at 1937 n. 3.

**11.** In light of this circumstance the instant case meets the threshold step of the two-step test enunciated by the Second Circuit to evaluate an application for attorneys' fees—determination of the ease with which counsel could be re-

at 2. However, while a case's "undesirability" is a factor to be considered in calculating the lodestar, "a court should not award any enhancement based on 'legal' risks ... [since the lodestar] is flexible enough to account for great variation in the nature of the work performed." *Id.* at 734, 107 S.Ct. at 3091 (O'Connor, J., concurring).

█ Finally, plaintiffs have not submitted any evidence to the court that without an adjustment for risk the plaintiffs "would have faced substantial difficulties in finding counsel in the local or other relevant market," since the fee applicant bears the burden of proving the degree to which the relevant market compensates for contingency. *Id.* at 733, 107 S.Ct. at 3090 (O'Connor, J., concurring).

█ Indeed, in approving the rates requested by plaintiffs for Lauer and da Cunha in the First Application, we expressly noted that the rates charged by Curtis Mallet were "in the low end of the spectrum of those charged by large established New York firms ... [but] in the high range of rates charged by attorneys of reasonably comparable skill in recent prisoners' rights litigation." July 8th Decision at 48. Thus, the considerable ability demonstrated by Curtis Mallet in overcoming difficulties raised by this case has been counterbalanced by the setting of a relatively high hourly rate of compensation. *Cf. Kreiger v. Gold Bond Building Products,* 863 F.2d 1091, 1099 (2d Cir.1988) (factors such as complexity of litigation, novelty of issues, quality of representation, number of people benefited, risk of nonpayment are reflected in hourly rate and number of hours).

█ Therefore, in view of the rates which this court has previously sustained

as reasonable, and in light of the fact that plaintiffs have offered no evidence as to the degree to which contingency is compensated in relevant market, we find this case is not one of those "rare" and "exceptional" cases ·where enhancement of the lodestar figure would be warranted.[12]

**Fees and Expenses Incurred after July 31, 1987**

Plaintiffs also apply for fees and expenses of $95,372.50 and $34,702.57 respectively, representing the work done, exclusive of that done on the due process and punitive damages issues, between July 31, 1987 and August 4, 1989 ("Supplemental Application"). Plaintiffs divide this period into five distinct categories:

—further post-trial matters from 8/8/87 until 9/16/87;

—responding to defendants' j.n.o.v. motion and opposition to the fee application from 9/17/87 until 10/27/87;

—post-trial period from 10/28/87 until 7/7/88;

—motion to the district court for interlocutory appeal certification from 7/8/88 until 8/14/88;

—matters arising after entry of the Second Circuit Opinion from 8/1/89 until 8/4/89.

Defendants, in addition to their continuing objections as to the rates and hours billed and the lack of documentation, raise concerns regarding the following: (1) the *de minimus* amount of post-trial time claimed by plaintiffs for work on the due process and punitive damages issues;[13] (2) the fact that plaintiffs make no reduction of time spent researching and writing on

---

tained to handle cases similar to plaintiffs'. *Kerr v. Quinn,* 692 F.2d 875, 878 (2d Cir.1982). In our view the rejection of plaintiffs' lawsuit by other attorneys indicates that counsel could not have been readily obtained by plaintiffs thus allowing this court to proceed to the second step—exercising our discretion to award fees. *Id.*

12. We also note that while plaintiffs did achieve an "excellent result" in the vindication of their first and eighth amendment rights, the fact that plaintiffs did not succeed on their due process

and punitive damages claims sustains the conclusion that the results were not "exceptional" enough to warrant an upward enhancement of the lodestar figure.

13. Defendants object to the 74.50 hours excluded out of a total of 692.5 total hours claimed by Curtis Mallet to have been spent on post-trial matters. However, our calculations from the figures recited in the Curtis Mallet papers reveal a total of 88 hours excluded by Curtis Mallet, leaving a balance of 639 hours for which they request fees.

issues concerning the viability of the j.n. o.v. motion; (3) the vagueness of plaintiffs' requests for expenses reimbursement.

As the Supplemental Application reflects revised hourly compensation rates after July 31, 1987, we first address the reasonableness of the rates requested.[14] We see no reason to depart from our previous position that the usual hourly billing rates charged to paying clients by Lauer and da Cunha, and by extension Mr. Rosenthal, are reasonable rates of compensation for their work in this action. We further decline to reduce Mr. O'Brien's presently requested rates, as we had done in the July 8th Decision, for the period after July 31, 1987 since his rates were previously reduced solely to reflect his lack of experience at that time.[15]

At the outset we note that Curtis Mallet has provided a computer printout of its billing memorandum in this case from August 3, 1987 to August 12, 1988. However, they submit no contemporaneous time records, only a footnote to the Plaintiffs' Supplemental Affidavit, regarding the time spent between August 1, 1989 and August 4, 1989. This is insufficient under the *Carey* requirement of contemporaneous time records. Therefore, we deduct from the Supplemental Application the $3,173.30 billed for that time. We further reduce the Supplemental Application's request for fees by another 15% to compensate for those entries which are too vague to adequately assess reasonableness and for hours spent on the timeliness of the j.n.o.v. motion. Finally, we deduct 30% from the costs figure in the Supplemental Application since it is unclear exactly how much of the costs were related to issues upon which plaintiffs did not prevail. In all other re-

spects we grant the fees and costs requested in the Supplemental Application excluding any lodestar enhancement.

In sum, for all the considerations discussed above, and in particular because of the unusual length and complexity of the litigation which included a lengthy jury trial as well as the skill demonstrated by plaintiffs' counsel in a case which had been previously turned down by other counsel, a total of $418,933.36 is awarded pursuant to Curtis Mallet's application to the district court for fees and expenses. This figure is comprised of the following:

—$299,276.43 in attorneys' fees for work done prior to July 31, 1987;

—$77,893.32 in attorneys' fees for work done subsequent to July 31, 1987;

—$17,471.81 for disbursements prior to July 31, 1987;

—$24,291.80 for disbursements subsequent to July 31, 1987.

### Application to the Second Circuit for Fees and Expenses

Pursuant to section 1988 plaintiffs also apply for $137,338.75 in attorneys' fees and $12,695.11 in disbursements representing a total of 730.5 hours devoted by plaintiffs' counsel for work associated with the appeal of this court's grant of defendants' j.n.o.v. motion, the vast bulk of that time claimed spent researching and preparing the appellate briefs and appendix. Defendants-appellees-cross-appellants (hereinafter "defendants") object to the amount requested in the application on grounds similar to their objections to the fee request to the district court.

---

**14.** The customary billing rates of Mr. Lauer rose from $250/hour to $275/hour after 7/8/88 and to $290/hour during the period between 8/1/89 and 8/4/89. The billing rates of Ms. da Cunha rose from $145/hour to $175/hour after 6/20/88, and the billing rates for Mr. O'Brien rose from $105/hour to $130/hour during that same period. Mr. Rosenthal's time was billed at $230/hour. Plaintiffs' Supplemental Affidavit, Exhibit H.

**15.** Mr. Lauer graduated from the Fordham University School of Law, *cum laude*, in 1974

and was admitted to the New York Bar in 1975; Mr. Rosenthal graduated from the Cornell University School of Law in 1976 and served both as an appellate law clerk and Assistant United States Attorney; Ms. da Cunha graduated from the Columbia University School of Law in 1982 and was admitted to the New York Bar in 1983; Mr. O'Brien graduated from the Georgetown University School of Law and was admitted to the New York Bar in 1987. Plaintiffs' Supplemental Affidavit, Exhibit G.

Since the parties' contentions are substantially the same as their earlier contentions before the district court, and the form and documentation by plaintiffs in their Second Circuit fees application are substantially the same as in their district court application, we will not revisit our rejection of defendants' arguments with regard to the rate of compensation, the multiple time entries, duplicative billing, plaintiffs' counsel's "billing judgment," and whether recoverable costs under section 1988 are limited to those enumerated in 28 U.S.C. § 1920. Moreover, we will not revisit our agreement with defendants' arguments regarding the lack of specificity of certain time entries and the inadequate amount of time claimed spent on the due process and punitive damages issues.

For the reasons articulated in connection with the application for fees and expenses to the district court, we find the strengths and infirmities of plaintiffs' district court application are mirrored in their application to the Second Circuit. We therefore similarly deduct 30% from the fee request and 30% from the expenses requested by plaintiffs in connection with the interlocutory appeal.[16]

Accordingly, the award to plaintiffs is $96,137.12 in attorneys' fees and $8,886.58 in disbursements for a total of $105,023.70.

### Plaintiffs' Application for the Taxing of Costs

Pursuant to Fed.R.App.P. 39(a) plaintiffs apply to recover $13,034.60 in costs for the printing of the appendix and briefs on appeal. Defendants primarily argue that in this instance of partial affirmance and partial reversal, no costs should be taxed. Plaintiffs argue essentially that since these costs may be awarded either pursuant to Rule 39(a) or as part of their section 1988 fee application there is no reason not to compensate them for these costs.

We disagree with plaintiffs' contention because it is our view that they do not distinguish the difference between an award of fees and expenses under section 1988 and the taxing of costs under Rule 39(a). An award under section 1988 compensates a plaintiff for success on the merits of his or her claim. In contrast, a reading of Rule 39(a) clearly indicates that the taxing of costs on appeal is made in consideration of the success of the parties to the appeal *relative* to each other.

Here, while plaintiffs succeeded in vindicating their constitutional rights to entitle them under section 1988 to an award of substantial attorneys' fees, both parties were partially successful on the appeal.[17] Moreover, even if plaintiffs had added the printing expense to their fees request, it is our view that plaintiffs have been adequately compensated for their expenses on appeal. Accordingly, we decline to tax costs to either party.

### CONCLUSION

Plaintiffs, pursuant 42 U.S.C. § 1988, are entitled to an award of attorneys' fees in the amount of $473,306.87 and disbursements in the amount of $50,650.19. We decline to tax costs to either party pursuant to Fed.R.App.P. 39(a).

SO ORDERED.

---

**16.** We have considered defendants' other objections and found them unpersuasive or adequately addressed in the deductions imposed.

**17.** The Second Circuit upheld the jury's award of compensatory damages with respect to plaintiffs' first and eighth amendment claims and rejected defendants' claim that the lower court had committed reversible error in certain evidentiary rulings. On the other hand, the Second Circuit rejected plaintiffs' argument that the motion for j.n.o.v. was improperly made, overturned the jury's award for damages in regard to the due process claim, and overturned the jury's award of punitive damages.