**Scott PASTRE, Plaintiff,**

v.

**Thomas L. WEBER, Individually and as a New York State Police Officer, Dover Plains, New York and Robert Pineau, Individually and as a New York State Police Officer, Dover Plains, New York, Defendants.**

**No. 83 Civ. 7827 (WK).**

United States District Court, S.D. New York.

July 28, 1989.

See also, 717 F.Supp. 987.

Tarquin Jay Bromley, Frederic L. Lieberman, Asst. Attys. Gen., New York City, for defendants.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

By Memorandum & Order of July 26, 1988, 717 F.Supp. 987, familiarity with which is assumed, I granted summary judgment for defendants on plaintiff's claim under 42 U.S.C. § 1983 for unlawful arrest, but denied the motion with respect to the claim under § 1983 for excessive use of force, as well as pendent state claims of assault and battery, infliction of emotional distress, negligence and gross negligence. After a two-day bench trial and extensive briefing by the parties, I now set forth my findings of fact and conclusions of law.

I observe at the outset that this case in *sui generis* in several respects. In the first place, I was presented with witnesses all of whom, as I found, were trying to tell the truth about a brief incident that occurred nearly seven years ago. Of course, all of them have inevitably reconstructed their memories to make their actions seem to them justifiable. For example, I have no doubt that the plaintiff and his witnesses now believe that the defendants pursued them without turning on the flashing lights to indicate their police authority, although I find that the contrary has been established beyond a reasonable doubt. Another unique aspect is that the lawyers for both sides have been thorough and imaginative in researching and presenting their legal positions, and responsible in making factual arguments.

A final peculiarity is the extent to which my findings of fact must be limited by the *res judicata* effect of prior state adjudicatory proceedings. My previous opinion surveyed all of the factual background of this incident and, after analyzing the appropriate legal principles, concluded that because of his conviction for resisting arrest plain-

Daniel H. Weiner, Sean F. Reilly, Hughes, Hubbard & Reed, New York City, for plaintiff.

tiff could not relitigate any fact that occurred before the moment he kicked defendant Weber and was hauled out of his car, and could only recover against the defendant state troopers for events occurring after that moment.

At the close of the trial I stated my tentative findings of fact, to which, with two exceptions noted below, I now adhere. The picture that emerges from all of the testimony is as follows: Plaintiff and his companions, having consumed altogether too much alcohol, were proceeding eastbound on Routes 44–343 when, in a lighthearted spirit of defiance of authority, plaintiff drove without a pause through a red traffic light at the junction of Route 22. Unhappily for plaintiff and his companions, defendants Weber and Pineau happened to be surveilling that intersection, and immediately turned on their flashing lights and started to give chase. This show of authority simply added zest to plaintiff's defiant conduct. Attempting to elude the defendants, he proceeded to lead them on a life-threatening 70 m.p.h. pursuit along twisting country roads, weaving back and forth, ultimately turning onto Sharon Station Road. This escape attempt at certain points looked as though it might succeed, but came to a halt when one of plaintiff's tires blew out, causing his car to spin around and come to rest facing the direction from which it had come. Failing to get the car started again, plaintiff and his

friends locked its doors and decided to wait and see what would happen.

The defendants, not knowing whether they were dealing with adolescent drunks or real criminals, had continued the chase at some risk to their own lives. As the chase proceeded, anger resulting from fear began to develop. When they finally came upon plaintiff's stalled vehicle, they found the doors locked, whereupon they smashed the car's front windows with their truncheons. Weber, standing by the driver's side window and facing the rear of the car, smashed the window with a back swing of his left hand. His truncheon probably came in contact with the back of plaintiff's head after it had passed through the window, causing the laceration that later resulted in fairly substantial bleeding.[1]

The windows having been broken, the defendants came face to face with plaintiff and his companions, and realized that their lives had been endangered by the horseplay of a couple of adolescent drunks; their accumulating anger, especially Weber's, exploded. Weber unlocked and opened the door,[2] and after plaintiff kicked at him several times, hauled him out, shouting: "you fucking asshole, you could have killed us." In the course of the brief period before plaintiff was finally placed under arrest and was hand-cuffed, Weber vented his rage by roughing him up on the ground, striking him on his head and arms and

---

**1.** Although at the close of trial I stated that the injury to the rear of plaintiff's head occurred outside the car, I now find that plaintiff has not sustained his burden of so proving. At trial I was persuaded by plaintiff's argument that no blood was found inside his car, but now realize that that should not be dispositive. Although no medical testimony was presented on the subject, I take judicial notice that there are no major blood vessels in the scalp; blood is there supplied by capillaries, from which, upon a laceration, it would ooze, not spurt. Since plaintiff was almost immediately dragged from the car, blood from the wound to the rear of his head, assuming such wound was sustained while still in the car, would not necessarily have shown up in the car. Since, as discussed below, an unimpeded blow to the head with the truncheon would have caused significantly greater injury, and possibly death, I find it more probable than not that this injury was caused by a swing of

Weber's truncheon as somewhat impeded by the contact with the window.

**2.** A further exception to my adherence to previously stated findings concerns my finding that defendant Weber had not tried to unlock plaintiff's car door after breaking the window, which bore on the accuracy of Weber's testimony that plaintiff and his companions had locked the car doors. Weber could not recollect at trial whether he had unlocked the door, and I based my finding that he had not on the assumption of a locking device requiring Weber to reach down into the car, which I was sure he would have remembered doing. Examination of the photographs in evidence revealed that the door lock consisted of a vertical button on the window sill, easily reachable, and thus I now find it more probable than not that he did unlock the door.

ribs.[3] At some point during this period, plaintiff was also pushed or hit so that he fell into the bushes by the side of the road, from which Weber extracted him, eventually getting him onto the ground. While lying on his stomach, plaintiff was kicked in the groin.[4]

To the extent that Weber went beyond the force necessary to arrest plaintiff, he rendered his "seizure" of plaintiff "unreasonable" and actionable under 42 U.S.C. § 1983 under the standard recently enunciated in *Graham v. Connor* (1989), — U.S. —, 109 S.Ct. 1865, 104 L.Ed.2d 443. The *Graham* case relieves me of any necessity to impute improper motive to Officer Weber as a prerequisite to a finding of excessive force, and I do not do so. Nor, on the other hand, am I "second guessing" any considered judgment as to what force was necessary to subdue the plaintiff. The plain fact of the matter is that, under extreme provocation, Weber lost his temper and failed to use any judgment at all in applying force which, objectively, was neither necessary nor reasonable. The foregoing reasoning eliminates any claim of qualified immunity under *Anderson v. Creighton* (1987), 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523. Weber could not have been under the impression that any New York statute entitled him to address a citizen as a "fucking asshole" and proceed to clobber him.[5]

The same reasoning makes inappropriate any award of punitive damages. See *Smith v. Wade* (1983), 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632. Punitive damages may be awarded upon a finding that the defendant had exhibited a "reckless or callous disregard of, or indifference to, the rights or safety of others" (461 U.S. at 33, 103 S.Ct. at 1628) or a "criminal indifference to civil obligations." (*id.* at 41, 103 S.Ct. at 1632) Assuming that, as a matter of law, the evidence would entitle me to make such a finding of fact, I decline to do so. As above indicated, Weber simply lost his temper under extreme provocation. As deplorable as it may be for a police officer to lose his temper in any circumstance, Weber's conduct does not, in my view of the facts, indicate that he is indifferent to the rights of others or to his civil obligations.

There remains the question of compensatory damages. As noted above, due to the *res judicata* effect of the prior conviction, I can only award damages for injuries sustained after plaintiff had kicked Weber and had been dragged from the car. Although plaintiff has not established that it is more probable than not that the lacerating blow to the back of the head occurred outside the car, he did sustain other injuries to his head, shoulders, ribs and groin, all of which I find to have occurred during the melee outside the car. Since plaintiff's actionable injuries were relatively minor and temporary, I conclude that he should be awarded $5000.00 in compensatory damages, as well as the $233.50 in medical

---

**3.** I reject plaintiff's contention that Weber clubbed him several times on the head with his truncheon. I have examined the standard-issue truncheon used by New York state troopers, and agree with Weber that if it had been used in the manner described by plaintiff the judicial system would be dealing not with plaintiff but with his estate. I therefore accept Weber's testimony that the only use he made of the truncheon was to smash the car window. I do find, however, that Weber injured plaintiff's head in some other manner.

**4.** I adhere to my earlier stated finding that Weber, not Pineau, delivered this kick. Plaintiff's only other theory of liability as to Pineau is his purported failure to intercede on plaintiff's behalf. See *O'Neill v. Krzeminski* (2nd Cir.1988), 839 F.2d 9, 11. I do not find that Pineau had

any meaningful opportunity to intercede in the altercation between Weber and plaintiff before the plaintiff's injuries had been sustained. It is uncontroverted that throughout most of the incident, Pineau was engaged in subduing one of the other passengers in the car, and in maintaining control over the remaining two passengers seated in its rear. By the time Pineau was able to come to Weber's assistance in hand-cuffing plaintiff, the damage had been done.

**5.** Weber's conduct further constitutes an assault and battery under state law. *Hinton v. City of New York* (1st Dep't 1961) 13 A.D.2d 475, 212 N.Y.S.2d 97. There is no evidence, however, that he gave any thought to the possibility of inflicting emotional distress, nor could his conduct be described as "negligent." The claims sounding in those tort theories are therefore dismissed.

expenses that he incurred during the several days following the incident.[6]

### CONCLUSION

The foregoing shall constitute my findings of fact and conclusions of law. The Clerk is directed to enter judgment in plaintiff's favor against defendant Weber on the claim under 42 U.S.C. § 1983 for violation of plaintiff's rights under the Fourth Amendment, and on the claim for assault and battery, and awarding damages in the total amount of $5,233.50. The Clerk is further directed to enter judgment dismissing the complaint against defendant Pineau. After any appeals have been finally determined (or the time for taking appeals shall have elapsed) plaintiff's attorneys may make application for such fees as may then be appropriate.

SO ORDERED.

---

**6.** Plaintiff also sought to recover an additional $50 for a single counseling session that he attended in 1987. Although I find credible plaintiff's claim that he suffered some emotional after-effects during the several months following the incident, and have accounted for them in my compensatory award, I do not find it more likely than not that a proximate link exists between the 1987 counseling and the 1982 incident, and thus this damages claim is denied.