Carlos SOBA, Plaintiff,

v.

Sgt. McGOEY, Det. McComiskey, Police Officers O'Brien, Blackwell, Langan, Police Department, and The City of New York, Defendants.

No. 83 Civ. 6085 (RPP).

United States District Court, S.D. New York.

March 29, 1991.

Reid & Priest, Stephen H. Kinney, Jr., New York City, for plaintiff.

Victor A. Kovner, Corp. Counsel, City of New York, Law Dept., Phyllis K. Saxe, Asst. Corp. Counsel, New York City, for defendants.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Plaintiff Carlos Soba (Soba) has applied, pursuant to 42 U.S.C. § 1988, for attorneys' fees in the amount of $251,768.40 and disbursements in the amount of $13,063.51 based on his having received a jury award of $60,000 against defendants McComiskey and O'Brien, members of the Police Department of the City of New York, for excessive use of force in effecting his arrest for an armed robbery conducted a few minutes before the arrest.

For the reasons that follow, the motion is granted to the extent of $201,202.00 for attorneys' fees and $11,563.51 in disbursements.

In 1983, Soba, an inmate in custody of the Department of Correctional Services of the State of New York, filed this action, pro se, pursuant to 42 U.S.C. § 1983 against several police officers, the Police Department of the City of New York, and the City of New York, based on six wounds he received at or around the time of his arrest on March 12, 1982 for an armed robbery of a bar and grill in Brooklyn, which had occurred several minutes earlier. Soba was carrying a sawed-off shotgun at the time of arrest with which, defendants maintained, he was threatening the health and safety of the defendants, which Soba denied.

On or about August 29, 1984 the firm of Reid & Priest commenced its representation of Soba in this action on a pro bono basis. On November 27, 1984, Reid & Priest filed a Second Amended Complaint on behalf of Soba in which Sergeant McGoey, Detective McComiskey, and police officers O'Brien, Blackwell and Langan, as well as the Police department and the City of New York were named as defendants.

Defendants moved to dismiss on the grounds that the action was collaterally estopped due to the plaintiff's conviction for armed robbery and on the grounds that plaintiff's sole remedy was a habeas corpus proceeding which could not be brought because plaintiff had failed to exhaust his state remedies. Defendants City of New York and Police Department also moved to dismiss on the grounds they could not be held responsible for the tortious acts of the individual defendants. Plaintiff's counsel opposed defendants' motions. On November 22, 1985, Judge Sprizzo denied defendants' motions for judgment on the pleadings without prejudice to move for summary judgment upon completion of discovery.

Upon stipulation of the parties, Judge Sprizzo ordered the matter be held in abeyance until Soba's appeal of his conviction was decided by the Appellate Division Second Department. The appeal was denied and on September 23, 1988, Judge Sprizzo ordered the completion of discovery by February 28, 1989.

Plaintiff's counsel then served discovery requests and took the depositions of the individual defendants and defended the deposition of Soba at Great Meadow Correctional Facility in Comstock, New York.

After completion of discovery the defendants demanded on April 11, 1989 that plaintiff discontinue against Blackwell, Langan, the Police Department and the City of New York. This demand was refused by plaintiff's counsel due to plaintiff's lack of consent.

On April 27, 1989, the defendants filed a motion for summary judgment. Pursuant to stipulations filed by the parties, the plaintiff's time to respond was adjourned to June 13, 1989, August 3, 1989, October 18, 1989, December 15, 1989, and February 15, 1990.[1] Plaintiff's opposing papers were filed on February 15, 1990; defendants' reply papers were filed April 11, 1990. On or about May 8, 1990 the Court granted the motion for summary judgment as to defendants Blackwell, Langan, Police Department and City of New York with consent of plaintiff, but denied the motion for summary judgment as to defendants McGoey, McComiskey and O'Brien, on the grounds that issues of fact remained to be decided by a jury with respect to the reasonable use of force under the circumstances claimed by plaintiff, and set the matter down for an early trial. The Court directed that each side bear its own costs. Defendants then moved for a stay of trial pending appeal of the Court's denial of the motion for summary judgment. The Court rejected this motion by order dated June 18, 1990 and set the matter down for trial in August 1990. On June 29, 1990, the defendants filed a notice of appeal to the Second Circuit of Appeals and applied to this Court for a stay of trial pending appeal, which request was denied on July 17, 1990.

Thereafter, plaintiff's counsel attempted to settle the case with counsel for the defense but those overtures were rebuffed by defendants who refused to make any offer of settlement.

Subsequent to the trial and verdict on August 1–3, 1990, the defendants renewed their motions for a directed verdict and moved for judgment notwithstanding verdict, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure and for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. The plaintiff's counsel opposed these motions and on October 17, 1990, the Court denied the motions. *See Soba v. McGoey*, 748 F.Supp. 227 (S.D.N.Y. 1990). This application for attorneys' fees followed on November 16, 1990.

The services for which compensation is sought cover a six-year period. During that time, plaintiff's counsel conducted the necessary discovery, including taking and defending depositions of the defendants, and prepared extensive memoranda in opposition to defendants' motions and appeals. In addition, plaintiff's counsel, in

---

1. During this period, plaintiff's counsel offered to stipulate that the action be discontinued against Officers Langan, Blackwell, the Police Department and the City of New York, but the offer was refused by defendants on January 22, 1990 because the stipulation did not reserve defendants' rights to recover costs.

conjunction with defense counsel, prepared an extensive joint trial order signed June 22, 1990, proposed charges, objections to charges, a trial memorandum and proposed jury interrogatories. These documents showed a high degree of professional training and were well researched. Plaintiff's counsel thoroughly prepared the case for trial and conducted the trial in a well organized and efficient manner. The jury rendered a verdict against defendants McComiskey and O'Brien and awarded $60,000 in compensatory damages, but did not find Sergeant McGoey liable. The jury did not award punitive damages, although it did find grounds existed for doing so.

For the aforementioned representation plaintiff's counsel sought an attorneys' fee of $251,168.40, representing $224,327.00 of time charges of attorneys and paralegals at regular time charges, less a reduction of $15,000 for duplication of effort, plus a twenty percent enhancement of $41,841.40 to the thus reduced charges for the " 'outstanding representation' provided to an 'unpopular plaintiff' over a six-year period." In addition, plaintiff's counsel asked for disbursements of $11,563.51, plus $1,500 for an "expert" witness fee,[2] for a total claim of $264,231.91.

Defendants have filed opposition to the plaintiff's application on the grounds (1) it is grossly excessive and duplicative, *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (unreasonably expended hours are not compensable), (2) it fails to reflect the limited success achieved by the litigation, (3) the rates requested are not shown to be prevailing rates, (4) no enhancement is appropriate for this case, and (5) the disbursements are excessive.

Plaintiff filed a reply affidavit which, although otherwise contesting defendants' claims, conceded inadvertent errors in the inclusion of certain time charges as compensable in its application for fees. Accordingly, it reduced its total for fees and disbursements to $261,345.91.

The defendants base their claim of "patently excessive and entirely unreasonable" fees on a stage by stage analysis of the litigation aimed at showing an unreasonable number of time charges were expended to accomplish the tasks involved. This approach is an oversimplification of the complexities of a representation of a pro se client, particularly one who has only a third-grade education and does not have command of the English language, as well as the difficulties of maintaining a constant team of attorneys on behalf of a non-paying client over a six-year period.

The Court's findings with respect to defendants' arguments that the number of hours spent on various portions of the litigation are unreasonable and excessive follow.

A. **Pre-discovery phase: September 1984 through September 1988** (preparing and filing an amended complaint; opposition to defendants' motion to dismiss)[3]

For this period, defendants assert plaintiff's counsel charged 17 hours to prepare the amended complaint and 164.25 hours in opposing the motion to dismiss, for a total of $25,807.00 in time charges. Plaintiff responds that defendants failed to note many other services which plaintiff's counsel performed, including various telephone calls and correspondence with the Corporation Counsel and with the plaintiff, three court conferences, preparation of a sur-reply memorandum, preparation of a notice of claim and a medical release and attempts to obtain police and medical records of their client. When one takes into account that the location of and linguistic abilities of the client, this time is not deemed unreasonable. The Court does not, however, allow the time charges prior to accepting the representation for review of the pro se court file and conferences to determine whether to accept representation

---

**2.** The Court notes that the expert witness was in actuality a medical witness corroborating the location of the six wounds plaintiff suffered and was of assistance in understanding plaintiff's evidence against McComiskey and O'Brien.

**3.** The parenthetical descriptions are defendants.

of the client totaling 2 hours and $140 in time charges.

## B. Discovery phase: September 1988 through March 1989 (attend one four hour deposition of plaintiff, prepare three brief document requests, depose five defendants in two days)

For the discovery period, defendants assert plaintiff's counsel charged about 288 hours, for a total bill of $29,863.00 in time charges. Plaintiff's counsel responds that in this period it reviewed the hearing transcript; attended a court conference; prepared subpoenas and prepared discovery requests of police department and hospitals, criminal court, including arrest and conviction records, firearm discharge records and medical records in all hospitals and correctional facilities in which plaintiff had been treated; reviewed a prior deposition transcript of plaintiff; traveled to Great Meadow Prison in Comstock, New York (near Glens Falls) and interviewed the client; reviewed briefs in the appeal of plaintiff's conviction for armed robbery; researched evidence needed in excessive force cases and for the § 1983 action against a municipality; defended a deposition of plaintiff at Rikers Island Detention Center; responded to defendants' document request; and drafted outlines for depositions of defendants and conducted said depositions.

In view of the extensive nature of the services rendered in this phase, the Court does not find the hours expended in time charges unreasonable.

## C. Summary judgment phase: March 1989 through May 1990 (prepare 28–page memorandum in opposition to motion for summary judgment and argument)

Defendants assert that for this phase plaintiff's counsel charged 414.50 hours and $62,898.00 in time charges. Plaintiff points out, however, that this time included, in addition to review of the defendants' affidavit and memorandum in support of the motion and argument of the motion, research and analysis of cases cited by defendants and further research of other law on the subject, research on the law of qualified immunity and on liability of a municipality in conjunction therewith (as well as time spent on a motion to amend the complaint which never was filed), telephone conferences with the client who was refusing to agree to dismissal of claims against certain defendants, preparation of an internal memorandum on ethical issues in representing a pro bono client and continuing to represent the client, correspondence with the client in relation to dismissing certain of the defendants from the action, and the preparation of a stipulation of dismissal against certain defendants in the action which defendants did not accept.

The defendants' position in opposition to this application overlooks entirely the difficulty of pro bono representation of an inarticulate convict located in northern New York State who speaks broken English. Much time is spent, when such clients are one's clients, which is unnecessary under other circumstances. Nevertheless, in the Court's estimation, the charge of $62,898 is too high in relation to the nature of the services performed and, in view of the amount of time charged on certain matters, i.e., an apparently false start by an inexperienced associate and summer associates and work required in part for the firm's self-protection, the Court will not allow hourly charges for Koloyanides of 15 hours, Hendricks of 13 hours, Nadler of 13 hours, Ezratty of 8.5 hours and Terner of 3.5 hours. The remainder of the time charges are found to be reasonable.

## D. Trial stage: May 9, 1990 through August 3, 1990 (prepare pretrial order and trial memorandum, prepare for trial, oppose defendants' motion for stay, conduct trial)

Defendants claim 729 hours were charged for trial-related tasks for a total of $82,829.00. Plaintiff's counsel responds that, in addition, there should be included telephone calls to settle the case; attendance at pretrial conferences on May 18, 1990, June 13, 1990 and July 30, 1990; research for and preparation of jury in-

structions; location of an expert medical witness to testify on location of the wounds, on plaintiff's body; preparation of such witness for trial; preparation of trial memorandum of law; research and preparation of opposition papers to defendants' application for a stay in the Second Circuit; attendance at pre-argument conference in the Second Circuit; argument in the Second Circuit in opposition to defendants' motion for a stay; preparation for trial; review of depositions; preparation of client for direct and cross examination; preparation of opening and closing statements; review of police records, disciplinary records and impeachment documents; retention of an interpreter; efforts to secure court orders for client's production from jail for trial and for client conferences; and conferences with the client.

The Court does not feel the defendants have shown any of this time, a great deal of which was caused by defendants' appeal from a denial of a summary judgment motion and subsequent applications for stays, was unnecessary other than those erroneous entries by which plaintiff has already reduced its application.

E. **Post-trial phase: August 6, 1990 through September 21, 1990** (prepare opposition to City's post-trial motion)

Defendants claim four attorneys and two paralegals billed approximately 230.75 hours subsequent to the trial for which $23,238.00 was charged. Plaintiff's counsel points out that, in addition to the work asserted by defendants, it prepared an appellee brief to the Second Circuit in response to an interlocutory appeal by defendants which was subsequently withdrawn and that it prepared answering papers to defendants' motion for judgment notwithstanding verdict, as well as the motions for directed verdict and new trial. These time charges are found to be reasonable.

To summarize, the Court finds the hours charged by plaintiff's counsel are not grossly excessive, but fully warranted under the circumstances of this litigation with the adjustments heretofore made of a re-

duction in the time charged prior to taking on the matter and the adjustment by the Court for time charged in the summary judgment phase. Defendants "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n. 11, 106 S.Ct. 2686, 2687 n. 11, 91 L.Ed.2d 466 (1986) (quoting *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C.Cir.1980)).

The Court also finds that no further adjustment than a reduction of $15,000, as provided in plaintiff's application of attorneys' fees, is to be made for duplication of services rendered. Defendants claim that the hours charged by plaintiff's counsel are duplicative in that twenty-one different attorneys and seventeen different paralegals charged time to this matter over the course of the litigation. They also complain that plaintiff's counsel has not provided a breakdown of its method of calculation of duplication of time of $15,000. Defendant is undoubtedly correct that if a fewer number of attorneys had conducted the litigation, the total charges would have been lower. Nevertheless, conflicting demands of clients are difficult to balance, particularly when the requirements of paying clients have to be balanced against those of pro bono clients. Here the vast majority of the hours expended were by Brown, Koloyanides and Ezratty. Those expended by the other attorneys were considerably less. In view of the span of years involved in connection with the litigation, the Court is reluctant to question the total number of attorneys assigned to handle the litigation or to second-guess assessments by a respected member of the bar as to the amount of duplicative hours involved by his firm in the representation.

The defendants' argument with respect to the number of paralegals utilized is less meritorious. Review of the services rendered includes a wide variety of tasks which a large law firm will typically delegate to a number of paralegals of different skill levels whose services are regularly charged to clients. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 109 S.Ct. 2463, 2460,

105 L.Ed.2d 229 (1989). The Court finds plaintiff's counsel has recognized that duplicative efforts may not be recovered, *Hinkle v. Christensen*, 548 F.Supp. 630, 633 (D.S.D.1982), *Hickman v. Valley Local School Dist. Bd. of Educ.*, 513 F.Supp. 659 (S.D.Ohio 1981), and, accordingly, limits the reduction in time charged to the amount of the estimate by plaintiff's counsel.

Defendants also assert that plaintiff is not entitled to recover for time charges with respect to the defense of the motion for summary judgment on behalf of Police Officers Langan and Blackwell, and the Police Department and the City of New York, and charges plaintiff's counsel did not act in good faith with respect to these defendants.

The summary judgment motion was not defended by plaintiff's counsel but stipulated to on May 8, 1990. The record makes clear that a year earlier plaintiff's counsel did not enter into a similar stipulation solely because of its client's refusal to consent. That plaintiff misperceived the true defendants or was unwilling to dismiss against other defendants should not reduce plaintiff's counsel's efforts under these circumstances. Subsequently, in January 1990 a stipulation was offered to defendants on much the same terms as the May 1990 stipulation and rejected. The Court has already made adjustments to the time charges on this phase of the litigation, to reflect in part the complications caused by the client relation problem and the Court does not feel further adjustment is necessary. Plaintiff ultimately prevailed and received compensatory damages. Plaintiff's counsel is entitled compensation for work done on claims, such as those against the other defendants because they were so closely related to successful claims. *City of Riverside v. Rivera*, 477 U.S. 561, 566–569, 106 S.Ct. 2686, 2690–91, 91 L.Ed.2d 466 (1986).[4]

Defendants also claim that the hourly rates charged by plaintiff's counsel are not properly justified as reasonable rates. In its reply papers, plaintiff's counsel set forth a schedule of hourly rates published in the November 19, 1990 issue of the *National Law Journal* showing the rates it charged are comparable with other New York law firms of its approximate size.[5] This schedule is not challenged. The Court finds the hourly rates charged by plaintiff's counsel to be reasonable and points out that the attorneys' hourly rates for those attorneys earlier referred to as bearing the heavy burden were $150, $105 and $100, respectively.

The defendants point out that the record is devoid of any indication the attorneys used by plaintiff in this action had any civil rights litigation experience. If the Court had to rely on such attorneys to handle the many pro se cases on its docket such as this, the Court's backlog would be mammoth. In many cases firms handling such cases on a pro bono basis are unsuccessful, are not entitled to recover attorneys' fees and expenses and suffer financially. When their client prevails, however, there is no reason why they should not be paid for their services at appropriate rates for the time required to handle the representation in a highly professional manner.

Lastly, the Court does not find plaintiff's counsel's expenses to be excessive.

Accordingly, the Court awards as follows:

---

4. Plaintiff's counsel did request the Court to include the language, "each party bearing its own costs" at the end of its order of May 8, 1990. Accordingly, plaintiff cannot recover court costs in its judgment attributable to the defendants covered by that stipulation. However, no further adjustment in attorneys' fees and expenses should be so allocated in these circumstances.

5. Lastly, defendants argue that plaintiff's counsel is not entitled to an enhancement on the theory of delay, contingency and quality of representation. The Court is of the opinion that the rates allowed plaintiff's counsel demonstrate the high quality of representation afforded him and declines to find an enhancement is warranted. Enhancements should be reserved for exceptional cases. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987).

1. Attorneys' fees reduced by $15,000     $209,327.00
2. Minus time charged error corrected by plaintiff    — 2,425.-00
3. Minus time not allowed by Court    — 5,700.-00

|  | |
|---|---|
| | — 8,125.00 |
| | 201,202.00 |
| Disbursements | 11,563.51 |
| Expert Witness fee [6] | –0– |
| Total | $212,765.51 |

| | | |
|---|---|---|
| Pre-retention time | 2.0 | 140 |
| Koloyanides | 15.0 | 1,575 |
| Hendricks | 13.0 | 1,235 |
| Nadler | 13.0 | 1,235 |
| Ezratty | 8.5 | 850 |
| Terner | 3.5 | 665 |
| | | $5,700 |

IT IS SO ORDERED.

**6.** The medical expert witness fee will be allowed to plaintiff as costs, since the expert's testimony was necessary in establishing the plaintiff's claim. *Coughenour v. Campbell Barge Line, Inc.,* 388 F.Supp. 501, 506 (W.D.Pa.1974). The witness was a fact witness, not an opinion witness. The fee is not allowed as part of the attorneys fee and expense award, however, in view of the holding in *West Virginia Univ. Hosp., Inc. v. Casey,* —— U.S. ——, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991).