**Scott PASTRE, Plaintiff,**

v.

**Thomas F. WEBER, Individually and as a New York State Police Officer, Dover Plains, New York and Robert E. Pineau, Individually and as a New York State Police Officer, Dover Plains, New York, Defendants.**

No. 83 Civ. 7827 (WK).

United States District Court, S.D. New York.

Aug. 20, 1991.

---

Daniel H. Weiner, Hughes Hubbard & Reed, New York City, for plaintiff.

Frederic L. Lieberman, Asst. Atty. Gen., New York City, for defendants.

WHITMAN KNAPP, Senior District Judge.

This action was commenced in 1983 against two New York State troopers, defendants Weber and Pineau, under 42 U.S.C. § 1983 and under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. The adjudication of the merits of the case has a lengthy procedural history, which culminated on May 3, 1990 with the Second Circuit's affirmance without opinion of our findings of fact and conclusions of law as set forth in our decision dated July 28, 1989, familiarity with which is assumed. *See Pastre v. Weber* (S.D.N.Y.1989) 717 F.Supp. 992, *aff'd*, (2d Cir.1990) 907 F.2d 144. We there found in favor of plaintiff on his claims against defendant Weber: (1) under § 1983 for violation of plaintiff's Fourth Amendment rights, and (2) for assault and battery. We awarded compensatory damages of $5000.00, as well as $233.50 in medical expenses. We dismissed all claims against defendant Pineau.

At least from the time plaintiff's present attorneys assumed responsibility for this action [1] to the Second Circuit's affirmance, the matter was vigorously litigated by both

---

1. Prior to that time, the litigation had been in a shambles.

sides.[2] As a review of the docket sheet reveals, since the appearance of plaintiff's present counsel, the litigation required several depositions and other discovery, numerous pre-trial conferences, a motion by plaintiff to compel certain discovery, defendants' motion for summary judgment, briefing both before and after a two-day bench trial, and, of course, briefing and argument before the Second Circuit.

The matter is now before us on plaintiff's application pursuant to 42 U.S.C. § 1988 for attorney's fees. While defendant concedes plaintiff is entitled to fees as the prevailing party in the litigation, he contests the amount requested. In addition to disbursements of $7,433.77, the application seeks attorneys' fees totalling $103,611.25.[3] The latter figure represents the total time charges of attorneys Daniel H. Weiner, and Sean Francis Reilly, two associates at the law firm of Hughes Hubbard & Reed, and of Hughes Hubbard paralegal J.S. Hollenberg.

Hughes Hubbard commenced its *pro bono* representation of plaintiff in December of 1985, more than two years after the complaint had been filed. Since that time, Weiner, then a second year associate, has—with the supervision of a Hughes Hubbard partner—acted as lead counsel.[4] Weiner was assisted throughout by Reilly, an associate one year his junior. Paralegal Hollen-berg participated only in the preparation of the instant application.

■ Although fees sought for services rendered in a multi-year litigation may be awarded at current rates in order to compensate for the delay in payment, *see Missouri v. Jenkins* (1989) 491 U.S. 274, 283–84, 109 S.Ct. 2463, 2469–70, 105 L.Ed.2d 229, the instant application seeks reimbursement for the services of attorneys Weiner and Reilly at historical rather than current rates. The following schedule sets forth these rates, indicating the increases, if any, that occurred during the years at issue:

| | Weiner | Reilly |
|---|---|---|
| 1985 | $100 | —— |
| 1986 | 100; 125 | $ 85; 105 |
| 1987 | 125 | 105 |
| 1988 | 150; 155; 180 | 135; 140; 160 |
| 1989 | 180; 215 | 160; 205 |
| 1990 | 215; 240 | 205 |
| 1991 | 240 | —— |

In his supporting affidavit, Weiner attests that the hourly rates at which compensation is sought are the historical rates charged by Hughes Hubbard to its paying clients for these particular attorneys' services. In further support of the reasonableness of these rates, plaintiff—in addition to relying upon fee awards in other cases—has submitted copies of a statistical law firm survey conducted by a major accounting firm.[5] The survey covers the

---

**2.** As we observed in our July 28 opinion, "the lawyers ... have been thorough and imaginative in researching and presenting their legal positions, and responsible in making factual arguments." 717 F.Supp. at 993.

**3.** The application initially sought $101,691.25. In his reply papers, plaintiff claims an additional $1920 in fees incurred since the date the application was filed. See Weiner Reply Affid. ¶ 2.

**4.** By 1989, Weiner had accumulated experience as lead counsel in five civil rights cases, exclusive of the instant litigation. In one such case, Judge Conboy expressed his particular appreciation for Weiner's *pro bono* representation of a prisoner who had been denied due process at a disciplinary hearing. *See Soto v. Lord* (S.D.N.Y. 1988) 693 F.Supp. 8, 9 n. 1.

**5.** Although the fee application plaintiff relies upon the survey's results, plaintiff's counsel would only produce the survey on condition that defendant enter into a confidentiality stipulation. Defendant refused. As we stated at oral argument, we find it inappropriate for plaintiff, having chosen to rely on the survey, then to condition production on defendant's agreeing to maintain the survey's absolute secrecy. In our view, such condition in effect would have deprived defendant of a meaningful opportunity to challenge the survey's accuracy. Accordingly, we required its production subject to a protective order that limited its use to defendant's opposition of the fee application. We also stated that we would subtract from the fees sought the time attributable to plaintiff's counsel's pre-argument pursuit of the confidentiality stipulation and would further deny an amount of time in order to compensate for the hours reasonably expended by defendant's counsel as a result. Accordingly, the fees as awarded shall not include 4.0 of the 7.5 hours expended in 1991 on the application.

years 1987 to 1989, and indicates that the hourly rates here asserted fall at or below the median range. As for paralegal Hollenberg, compensation is sought at the rate of $85 per hour, at which rate, it is claimed, Hollenberg's time is billed by Hughes Hubbard in the ordinary course of business. Weiner Affid. ¶ 14

Plaintiff asserts that over the course of the last five years more than 650 hours of work have been expended in litigating this case (including prosecuting the instant application), and has submitted time records documenting how each hour was spent. The time records—which take the form of computer print-outs, *see* Exhs. C to G, Weiner Affid.—include the date, the name of the person recording the time, a description of the task performed and an estimate—in fifteen minute increments—of the amount of time expended. In total plaintiff seeks to recover for:

> 283 hours by Weiner
> 388　　 〃 　　 〃 　 Reilly
> 10　　 〃 　　 〃 　 Hollenberg

In Weiner's affidavit, he informs us that in preparing the application the following were excluded: the time of the partner who provided general guidance to the associates or of any other member of the firm's legal staff who spent less than 10 hours on the case; and time that was billed either without a sufficient work description or that is arguably duplicative. Weiner Affid. ¶¶ 10, 16

In support of the claim for compensation of disbursements, plaintiff submits computer print-outs which document for each disbursement the nature of the expense, its cost, and the date on which it was incurred. Weiner has attested to the fact that all costs sought to be recovered are of the type normally charged to paying clients. In this regard, plaintiff seeks to recover $7,433.77 for: photocopies, transcripts, computer database legal research, messenger services, contract printing, binding, postage, travel, meals, and certain telephone calls.

Defendant raises several objections to the fee application. He contends: (1) that the application should be denied *in toto*, claiming that it fails to meet the contemporaneous time records requirement of *New York State Ass'n for Retarded Children v. Carey* (2d Cir.1983) 711 F.2d 1136, 1147–48; (2) that the hourly rates at which compensation is sought are excessive; (3) that an excessive number of hours was spent on certain aspects of the litigation and, further, that the recovery should be limited to the time spent on claims against Weber, the defendant against whom plaintiff prevailed; and (4) that the recovery sought for certain costs and disbursements is either unreasonable or altogether unwarranted.

## DISCUSSION

Before addressing the objections raised by defendant, we briefly review the general principles that guide our consideration of the application. As the Supreme Court articulated in *Missouri v. Jenkins* (1989) 491 U.S. 274, 286, 109 S.Ct. 2463, 2470, 105 L.Ed.2d 229 (citations omitted):

> A reasonable attorney's fee under § 1988 is one calculated on the basis of rates and practices prevailing in the relevant market, *i.e.,* "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," and one that grants the successful civil rights plaintiff a "fully compensatory fee," comparable to what is "traditional with attorneys compensated by a fee-paying client."

In this regard, the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart* (1983) 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40. This "lodestar" amount may then be enhanced by means of a multiplier or reduced based on the circumstances of the particular litigation. *See Pennsylvania v. Delaware Valley Citizens' Council* (1987) 483 U.S. 711, 729–31, 107 S.Ct. 3078, 3088–90, 97 L.Ed.2d 585; *Blum v. Stenson* (1984) 465 U.S. 886, 899, 104 S.Ct. 1541, 1549, 79 L.Ed.2d 891. Here, plaintiff does not request an enhancement.

### (1) *Contemporaneous Time Records*

■ Defendant contends that the application does not meet the contemporaneous records requirement of *New York Ass'n for Retarded Children v. Carey* (2d Cir. 1983) 711 F.2d 1136, and therefore should be denied in its entirety. In *Carey*, the fee applicant failed to maintain contemporaneous records, and based its application in large part upon retrospective estimations of time expended during the course of the multi-year litigation. Noting that such sparse documentation made review of the application and consideration of objections thereto exceedingly difficult, the Court of Appeals established the requirement (to be imposed prospectively) that fee applicants document their applications with contemporaneous time records specifying "for each attorney, the date, the hours expended, and the nature of the work done." *Id.* at 1147–48.

In support of the instant application, plaintiff has provided chronological print-outs of the computer records generated by Hughes Hubbard's accounting department from the contemporaneous daily time sheets of each attorney or paralegal for whose services reimbursement is sought. Plaintiff's counsel has represented that these print-outs set forth verbatim the entries on the daily time sheets. Reply Mem. at p. 8; Weiner Affid. ¶¶ 6–7. Defendant contends, however, that the mandate of *Carey* has been violated because plaintiff did not annex to his application the time sheets themselves.

Defendant's argument has several times been rejected by district judges in this Circuit. *See, e.g., Meriwether v. Coughlin* (S.D.N.Y.1989) (Stewart, J.) 727 F.Supp. 823, 826–27; *Koster v. Perales* (E.D.N.Y. July 13, 1989) (Glasser, J.) 1989 WL 79482, at 3. We, too, perceive no justification for requiring plaintiff to produce the daily time sheets which would add little to our consideration of the reasonableness of the award sought. *See Koster*, at 3 (rejecting argu-

ment that recovery should be reduced because attorneys' hand-written time sheets had been replaced by typewritten, easier-to-read versions of same information); *see also Wilder v. Bernstein* (S.D.N.Y.1989) (Ward, J.) 725 F.Supp. 1324, 1333–34 (same); *Lenihan v. City of New York* (S.D.N.Y.1986) (Conner, J.) 640 F.Supp. 822, 824 (same).

We have reviewed the print-outs and find—except as discussed below—that they sufficiently set forth the date, the hours expended, and the nature of the work done, so that we are able to evaluate the reasonableness of the application.[6] *See, e.g., New York State NOW v. Terry* (S.D.N.Y.1990) 737 F.Supp. 1350, 1359 ("Contemporaneous time records are necessary so that the Court is not faced with an impossible task when asked to determine an appropriate fee amount.")

### (2) *Hourly Rates*

*Attorney Rates.* "A reasonable attorney's fee under § 1988 is one calculated on the basis of rates and practices prevailing in the relevant market." *Jenkins, supra,* 491 U.S. at 286, 109 S.Ct. at 2470. In this regard, the successful civil rights plaintiff is to be granted a " 'fully compensatory fee,' " "comparable to what 'is traditional with attorneys compensated by a fee-paying client.' " *Id.* at 286, 109 S.Ct. at 2470 (citations omitted).

■ A reasonable hourly rate is one which is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum, supra,* 465 U.S. at 895–96, 104 S.Ct. at 1547. Plaintiff here properly refers us to rates charged by law firms with litigation practices comparable to Hughes Hubbard. *See, e.g., Soba v. McGoey* (S.D.N.Y.1991) (Patterson, J.) 761 F.Supp. 273, 278 (awarding fees of Reid & Priest law firm at rates charged by other New York law firms comparable in size), *aff'd,* (2d Cir.1991) 935 F.2d 1278; *Terry,*

---

**6.** Indeed, it would seem that the copying, compilation, and perhaps partial redaction of the daily time sheets would add little to our evaluation of the application except that we would of course be obliged to review for reasonableness the additional charges such paperwork would generate.

*supra,* 737 F.Supp. at 1361 (reasonable rates arrived at by looking to rates charged by major New York City law firms with litigation practices); *Meriwether, supra,* 727 F.Supp. at 831 (fees awarded to law firm of Curtis, Mallet–Prevost, Colt & Mosle based on hourly rates at which firm billed its paying clients); *Wilder, supra,* 725 F.Supp. at 1336 (awarding actual rates charged to paying clients for services of three Webster & Sheffield associates since rates fell within parameters of hourly rates charged by similar firms in New York City).[7]

While we are satisfied both by our own familiarity with the relevant market and the papers submitted in support of the application, that the rates at which compensation is sought are in line with fees charged to their paying clients by firms comparable to Hughes Hubbard, we observe that these rates are somewhat higher than those generally awarded to civil rights attorneys of far greater experience. *See, e.g., Huntington Branch NAACP v. Town of Huntington* (E.D.N.Y.1990) 749 F.Supp. 62, 64 ($135/hr. appropriate award for civil rights attorney with five years' experience); *Carrero v. New York City Housing Authority* (S.D.N.Y.1988) 685 F.Supp. 904, 908 (fees awarded at rate of $175/hr. for 1978 law school graduate with vast experience in civil rights litigation), *modified on other grounds,* (2d Cir.1989) 890 F.2d 569.

Although we have several times noted the extraordinary competence, ingenuity and devotion plaintiff's attorneys displayed in this litigation, we think there is force in defendant's argument that he should not be required to pay for legal services at the rate Hughes Hubbard would charge to, say, General Motors or IBM (should they be among its clients), but should be required to compensate plaintiff only for what would have been charged by a competent attorney specializing in civil rights litigation. In this regard, we note that firms such as Hughes Hubbard derive value from undertaking litigation such as this which may indeed far exceed anything we can award. Had General Motors or IBM been the client it is fair to assume that neither Weiner nor Reilly would have been given the authority he had in this litigation, nor would they have acquired the experience gained from the exercise of such authority. Moreover, the known fact that Hughes Hubbard provides its young associates with the opportunities that arise from this kind of litigation undoubtedly enables the firm to attract associates of a caliber that might not otherwise be available to it. We therefore shall be guided in calculating the lodestar by, among other things, what we believe would be required to retain a competent civil rights attorney. Bearing this in mind, we calculate the lodestar figure using the hourly rates set forth in the following schedule, which rates we find to be reasonable under the circumstances:

| | Weiner | Reilly |
|------|--------|--------|
| 1985 | $ 85 | —— |
| 1986 | 100 | $ 90 |
| 1987 | 115 | 105 |
| 1988 | 135 | 125 |
| 1989 | 160 | 145 |
| 1990 | 185 | 165 |
| 1991 | 205 | —— |

■ *Paralegal Rate.* The application seeks compensation for ten hours spent by paralegal Hollenberg in preparing the application. The proposed hourly rate is $85.

**7.** Relying primarily upon *Huntington Branch NAACP v. Town of Huntington* (E.D.N.Y.1990) 749 F.Supp. 62, 64, however, defendant contends that the relevant market from which the appropriate rates are to be ascertained is that of counsel in civil rights cases rather than that of New York firms comparable to Hughes Hubbard which most likely engage in such litigation on a *pro bono* basis.

In *Huntington Branch,* however, the court had no occasion to pass on this contention as both sides agreed that the relevant market was the market for counsel in civil rights cases. *Id.* Moreover, it is apparent from Judge Glasser's opinion that he considered a survey—similar to that presented on the instant application—which indicated the rates that were charged by firms similar in size to and located in the same county as the firm that represented the prevailing plaintiff. *Id.*

Although Weiner states in his affidavit that this rate is charged to Hughes Hubbard's clients in the ordinary course of its business, the application provides no other evidence from which we may infer that that rate is a reasonable market rate. *See Blum, supra,* 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11 ("[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services.") We therefore find it appropriate to deny reimbursement for Hollenberg's services at the requested rate and instead award compensation at the rate of $50 per hour, which rate is in line with other awards for paralegal services and falls within the range of rates proposed by the defendant. *See, e.g., Pierce v. Tripler* (S.D.N.Y.1991) 770 F.Supp. 118, 121 (awarding $45 per hour); *County of Suffolk v. Long Island Lighting Co.* (E.D.N.Y. 1989) 710 F.Supp. 1477 (awarding $65 per hour), *rev'd on other grounds,* (2d Cir. 1990) 907 F.2d 1295; *see also* Defendant's Mem. at 20.

### (3) *Time Expended*

 Defendant launches both general and specific attacks on the hours sought. In general, he contends, the application suffers from a pervasive lack of detail that makes it difficult to ascertain which hours were reasonably expended and which were not. We have reviewed the time records and find that for the most part they are sufficiently specific, and that vague entries are made clearer by entries preceding or following them. *See, e.g., Meriwether, supra,* 727 F.Supp. at 827; *Lenihan, supra,* 640 F.Supp. at 826.

However, it does appear—as defendant contends—that the time expended on certain phases of the litigation was more than may reasonably have been necessary.[8] Specifically, defendant challenges as duplicative and excessive: (1) 128.75 hours spent between November 9, 1987 and April 18, 1988 preparing for and responding to de-

fendants' summary judgment motion; (2) 22.5 hours expended between September 8 and October 19, 1988 preparing for and attending the pre-trial conference that followed the issuance of our decision on the summary judgment motion; (3) 132.5 hours spent between December 5, 1988 and February 28, 1987 on trial preparation; (4) 72.5 hours spent between March 14 and May 18, 1989 reviewing the trial transcript and preparing the post-trial memorandum; and (5) 45.75 hours expended between February 19 and March 6, 1990 preparing the brief on appeal.

In our view, the time expended in connection with the summary judgment motion was fully warranted. The motion was complex and aggressively pursued. Indeed, defendants' own papers comprised a 64–page opening memorandum of law, affidavits totalling 42 pages, a 22–page Local Civil Rule 3(g) statement (with an additional 482 pages of exhibits), and an 18–page reply brief. *See* Reply Mem. at 2; *cf. City of Riverside v. Rivera* (1986) 477 U.S. 561, 580–81 n. 11, 106 S.Ct. 2686, 2697–98 n. 11, 91 L.Ed.2d 466 (defendant " 'cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.' " (quoting *Copeland v. Marshall* (D.C.Cir.1980) 641 F.2d 880, 904)).

Having considered the other four challenged categories, and bearing in mind that the case involved a trial lasting only two days, we conclude that the hours expended should be reduced by 25% to ensure that the award includes only those hours reasonably expended. *See, e.g., DiFilippo v. Morizio* (2d Cir.1985) 759 F.2d 231, 236 (29 hours spent on post-trial memorandum after one day trial excessive as a matter of law); *cf. Carey, supra,* 711 F.2d at 1146 (approving percentage cuts as a practical means of "trimming fat" from a fee application).

 Defendant contends that a further reduction in the fee award is warranted because plaintiff did not prevail against defendant Pineau. Thus, he asserts, the

---

**8.** We flatly reject defendant's contention that plaintiff's counsel exercised "no billing judgment whatsoever" in preparing the instant application. Lieberman Affid. ¶ 14

award should reflect only those hours expended in pursuing relief against defendant Weber. We disagree. Our consideration of this contention necessarily begins with *Hensley v. Eckerhart* (1983) 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40, in which the Court held that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees." *Id.* at 440, 103 S.Ct. at 1943. The Court qualified that holding as follows:

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.

*Id.*

In our view, the claims asserted against Pineau were inextricably interrelated with those asserted against Weber. They arose from the same common core of facts, *i.e.* the defendants' conduct at the time of plaintiff's arrest, and were based on the same legal theories. Moreover, in light of Pineau's integral involvement in the pursuit and arrest of plaintiff, we are not persuaded that the hours required by the litigation would have been substantially less had Pineau not been named as a defendant. We accordingly decline to reduce the award on the ground that plaintiff prevailed only against Weber. *See Soba v. McGoey* (S.D.N.Y.1991) 761 F.Supp. 273, 278 (denying fee reduction sought on ground that plaintiff had prevailed on "excessive force" claim only against two of five defendant police officers), *aff'd*, (2d Cir.1991) 935 F.2d 1278.

### (4) *Disbursements*

Defendant contends that several categories of disbursements are not properly awardable because they are part of Hughes Hubbard's overhead and therefore are accounted for in the attorney's hourly rate. As noted above, however, plaintiff's counsel's affidavit attests to the fact that Hughes Hubbard—in accordance with its billing practices—customarily charges its clients separately for such costs. In the absence of any evidence to the contrary, we accept counsel's sworn statement.

■ Defendant also assails plaintiff's request for disbursements on the ground that they are inadequately documented. For example, defendant contends that word-processing costs should not be awarded because the computer-compiled entries do not specify the document worked on or its status, *i.e.* whether first draft, redraft or final. Similarly, defendant asserts that photocopy costs should be denied because the entries do not specify the document reproduced. We reject these and other such contentions on the ground that the entries need only provide an adequate basis for assessing the reasonableness of the expenditure. Having reviewed the disbursements requested, we find them to be reasonable and so include them in the award.

■ On a final note, we address defendant's contention—raised for the first time at oral argument—that the fee award should be reduced to a figure more in line with plaintiff's compensatory damages recovery. In our view, this "proportionality" argument has been foreclosed by *Cowan v. Prudential Insur. Co. of America* (2d Cir. 1991) 935 F.2d 522, in which the Court stated that "[a] presumptively correct 'lodestar' figure should not be reduced simply because a plaintiff recovered a low damage award." *Id.* at 526 (recognizing the continued vitality of *DiFilippo v. Morizio* (2d Cir.1985) 759 F.2d 231, 235).

### CONCLUSION

■ In light of the foregoing, plaintiff is entitled as the prevailing party to an award of attorneys' fees in the amount of $81,-010.25 and of disbursements in the amount of $7,433.77, as set forth in the appendix annexed to this opinion.

SO ORDERED.

### APPENDIX

| | Hours Awarded | Hourly Rate | Fees |
|---|---|---|---|
| **WEINER** | | | |
| 1985 | 2.0 | 85 | $ 170 |
| 1986 | 30.5 | 100 | 3,050 |
| 1987 | 27.75 | 115 | 3,191.25 |
| 1988 | 63.75 | 135 | 8,606.25 |
| 1989 | 80.0 | 160 | 12,800 |
| 1990 | 37.25 | 185 | 6,891.25 |
| 1991 | 3.5 | 205 | 717.50 |
| **REILLY** | | | |
| 1986 | 39.25 | 90 | 3,532.50 |
| 1987 | 63.0 | 105 | 6,615 |
| 1988 | 95.5 | 125 | 11,936.50 |
| 1989 | 137.0 | 145 | 19,865 |
| 1990 | 19.0 | 165 | 3,135 |
| **HOLLENBERG** | (paralegal) | | |
| 1990 | 10.0 | 50 | 500 |
| | | | $81,010.25 |
| Disbursements | | | 7,433.77 |
| **TOTAL AWARD** | | | $88,444.02 |